## Dubs *versus* Dubs.

In Pennsylvania, dower and curtesy are incident to both legal and equitable estates.

Where a testator devised lands, in trust for his daughter A. and her heirs, to be held for her separate use, free from the control of any future husband, and without the power of alienation, or of anticipation of the income thereof; and A. married, and died, leaving her husband surviving: *Held*, that the surviving husband was entitled to curtesy in such lands.

ERROR to the Common Pleas of *Bucks county.*

This was an amicable ejectment by George R., Thomas C., Howard, and Joseph Dubs, by their guardian The Pennsylvania Company for Insurances on Lives and Granting Annuities, against Dr. Samuel R. Dubs, wherein the parties agreed upon a case stated, to be considered as a special verdict and subject to a writ of error. The material facts are recited in the opinion of the court below, which was delivered by

SMYSER, P. J.—" The plaintiffs are the children and heirs at law of Adelaide Dubs (late Adelaide Ross), a daughter of the Hon. John Ross, deceased. The defendant is her surviving husband. The land in controversy is that mentioned in the following extract from Judge Ross's will, and which the defendant claims to hold as tenant by the curtesy.

[Dubs *v.* Dubs.]

" ' I give to my sons Thomas and Jenkins, my plantation called the Hare Place, with two detached pieces of 15 and 10 acres of woodland, and also 7 acres of woodland bought of the executors of Judge Hutchinson, *in trust for my daughter Adelaide and her heirs.* I also give the same persons $3000, which will be due on the death of her aunt; and $4000 to be taken from my bank stock or bonds to the same persons, in trust as to the interest for my said daughter Adelaide, and as to the principal for her heirs. And my will is, that the said trustees and their successors shall hold the *said lands,* and the said moneys, securities or stocks, *in trust, as to the yearly income or produce, in trust for the sole and separate use of my said daughter Adelaide, without and free from the control of any husband to whom she may be married, and without any power of her, or of her and her husband, aliening or disposing the estate or principal of the money by deed, mortgage, or any other instrument or contrivance.* The said trustees to give her the annual produce yearly or at shorter periods, as may be necessary, but *not in anticipation*—her receipt to be a good discharge and acquittance.'

" The testator died in 1834. At that time Adelaide Ross was of age and as yet unmarried. The will was not made in contemplation of any particular marriage. She married Dr. Dubs, the defendant, in 1836, and died in 1851, leaving her husband the defendant, and the plaintiffs her children, surviving her. The defendant is in possession, and claims his curtesy in the lands so devised. Whether he is entitled thereto is the only question involved.

" The solution of this question depends on the answer to another : was Adelaide Dubs in her lifetime, during her coverture, seised of an estate of inheritance, either equitable or legal, in the land ?

" Were there nothing in this devise beyond the gift to trustees in trust for her and her heirs, this would be a use executed in her by the statute of 27th Henry VIII., and would vest in her the absolute legal estate in fee. Even if we regard the subsequent words of limitation as to the yearly income, as giving her only a life estate, with remainder to her heirs, the effect, by virtue of the rule in Shelly's Case (which is a rule of property in Pennsylvania), would be the same.

" On a former occasion, in distributing the moneys and stock in the hands of the trustees, we regarded the word 'heirs,' in that connection, as a word of purchase; because, as to the personal bequests, the trust was expressly limited ' as to the interest, to my said daughter,' whilst the principal was as expressly given to the heirs, as a new stock or class ; and because, whether this word was regarded as one of limitation, or purchase, the husband's interest, under our statute of distributions, would be the same, as

[Dubs v. Dubs.]

far as the personalty was concerned; making it a matter of no practical moment in which light it was regarded.

"But such is not the case as to the realty; and I conceive this to be one of the cases in which, even had the testator's intention been otherwise, without any other superadded words for its manifestation, the *actual* would have to yield to the *legal* intent: Auman v. Auman, 9 *Harris* 344.

"There is, however, a separate use in Adelaide Dubs, raised by this devise. The effect of this is next to be considered.

"Had she been a feme covert at the date of the will, or even at the time it took effect by the testator's death, or had the provision been made and inserted in the will, in contemplation of marriage, it would have been enforced so long as the coverture continued; and, in the case as it stands, the statute of uses never, during her life, would have executed the estate in her, but the trust would have remained, leaving to her a purely equitable estate; whilst it would be executed in the heirs, giving them the legal estate; the consequence would have been to prevent the two from uniting in her lifetime, because, during her life, they never were of the same quality. In such a case, I think it is clear, that there is no curtesy in the husband. All the cases, however, in which a trust for separate use has been maintained against the statute of uses, and even the more extended principle indicated by LOWRIE, J., in Kuhn v. Newman, 2 *Casey* 230, will be found, on examination, to be where there was coverture, either existing or contemplated, of the *cestui que use*, when the provision was made or took effect. The cases of Hearle v. Greenbank, 3 *Atk.* 716, Bennet v. Davis, 2 *P. Wms.* 316, Rigler v. Cloud, 2 *Harris* 363, Cochran v. O'Hern, 4 *W. & S.* 95, Stokes v. McKibbin, 1 *Harris* 267, are all of this class. But it seems to be well settled now by authority, that where there is a fee limited to the separate use of a feme covert, to the exclusion of the marital rights of the husband, such restraint ceases on her becoming discovert by his death; the trust ceases— the statute executes the estate in her; and she may alien or encumber it at pleasure; and a subsequent second marriage does not reimpose the restraint, or re-establish the trust: Smith v. Starr, 3 *Wh.* 62; Hamersley v. Smith, 4 *Id.* 126; Faries' Appeal, 11 *Harris* 30; Jones v. Salter, 2 *Rus. & Myl.* 208; Barton v. Briscoe, *Jac.* 603; Massey v. Parker, *Myl. & Keen* 174; Miller v. Bingham, 1 *Iredell Eq.* 432.

"And that, even where the testator has endeavoured, in express terms, to extend the restraint to a second or any subsequent marriage, after discoverture, as to the period when she shall again become sole: Woodmeston v. Walker, 2 *Rus. & Myl.* 197; Jones v. Salter, *Id.* 208; Glyn v. Baster, 1 *Young & Jervis* 329; Harrison v. Brolaskey, 8 *Harris* 299.

"And the same results follow where the *cestui que trust* is, as

in this case, a feme sole, and does not marry until after testator's death. In such case, the estate vests absolutely, freed and for ever discharged from any restraint attempted to be imposed on marital rights, or control, in the contingency of a future marriage; and the *status* thus acquired, is never afterwards changed by force of anything contained in the devise: Woodmeston *v.* Walker, 2 *R. & Myl.* 197; Brown *v.* Pocock, *Id.* 210, s. c. 5 *Sim.* 663; Kuhn *v.* Newman, 2 *Casey* 232.

"There is here, however, a clause against anticipation. Will that preserve the trust estate until the beneficiary marries, or revive it on her second marriage? That it will not, was, at one time, held, in Woodmeston *v.* Walker; also, Jones *v.* Salter, Brown *v.* Pocock, and Barton *v.* Briscoe, already cited; also, in Acton *v.* White, 1 *Sim. & Stu.* 429.

"In Jones *v.* Salter, it was held that a clause against anticipation will not prevent a feme covert from aliening on becoming discovert. Brown *v.* Pocock was a life interest in a trust fund, given to a female infant, with a similar clause against anticipation; and it was held, that after her majority, and before marriage, she might, notwithstanding, assign her whole interest; on the ground, that a separate gift for the separate use of a single woman, without anticipation, will not bar her alienation, unless made with reference to an intended marriage.

"Did the law rest on these adjudications only, it would seem to be against the plaintiffs; but the English courts of equity, in later cases, have returned to what Chancellor KENT calls 'the older and juster doctrine,' viz.: that a restraint against anticipation annexed to a separate use for a feme sole, even in the case of a trust in fee, will take effect on coverture, and reattach on a second marriage, although suspended and inoperative during the interim before marriage, or the interval between the first and second coverture: Tullet *v.* Armstrong, 1 *Beavan* 1, s. c. 4 *Myl. & C.* 390; Scarborough *v.* Borman, *Id.* 34, s. c. 4 *Myl. & C.* 378; Clark *v.* Jaques, *Id.* 36; Nedby *v.* Nedby, 4 *Myl. & C.* 367; Dixon *v.* Dixon, 1 *Beavan* 40.

"The effect of these cases may be thus stated—where property is given to the separate use of a feme sole, without the right of anticipation, she may nevertheless alien if she chooses, while she continues single, because the restraint is inconsistent with the gift or grant. Should she marry without alienation, or settlement, the restraint reattaches, and while under coverture, her rights, and those of her husband, in so far as they depend upon hers, will be restricted just as if she had been covert when the devise or gift took effect.

"On becoming discovert by her husband's death, her power of alienation will again revive, and so revived, will continue again until her second marriage, when, if unexercised during the interval,

[Dubs v. Dubs.]

it will again cease; if not, by the terms of the devise, confined and limited to her first marriage. See *Williams on Real Property*, 183–4 and notes; also, *Williams on Personal Property*, 304–5.

" Nor do any of our Pennsylvania cases contradict this doctrine. I have carefully examined them, from Smith v. Starr down to Kuhn v. Newman, and find that in none of them was the restraint on anticipation found, nor do any of them refuse to it, where it is inserted, the humane and benevolent effect had in view by Lord THURLOW, when its introduction was first sanctioned by him in Miss Watson's case.

" This doctrine harmonizes in spirit, also, with that laid down in Lancaster v. Dolan, 1 R. 247, by the late Ch. J. GIBSON, and reiterated in Thomas v. Folwell, Dorrance v. Scott, Wallace v. Costen, and Rogers v. Smith; that the power of a feme covert in a trust for her separate use, is confined to what is expressly given, instead of being coextensive with what is not expressly restrained or denied. It squares with a chancellor's conscience, which always impels him to give effect to a manifest intent, being legal, when no stern rule of law forbids it; and the plain intent here was to make Adelaide Ross and her heirs the beneficiaries, and the sole beneficiaries of the estate.

" I am of opinion, that on the testator's daughter, Adelaide, intermarrying with the defendant, without exercising the right of alienation which belonged to her optionally while sole, the trust for separate use, with all its denial of absolute control, and restraint on alienation, encumbrance, or anticipation, was reimposed, or rather, to speak more correctly, never was divested or determined; that, these restraints and conditions being inconsistent with an estate of inheritance in the land, such estate never belonged to her during her coverture; and that, therefore, her husband is not entitled to the curtesy claimed.

" He is not entitled thereto for another reason. The trust being as it were reimposed with all its incidents, the legal estate was, and remained, in the trustees during the rest of her life, she having a mere equitable estate, whilst by force of the statute, her heirs, on her death, would have the legal title cast on them, through an interest vesting in them under the will, during her lifetime. As, therefore, there never was, during coverture, a union of the legal and equitable titles, there is no curtesy in the surviving husband, as was decided in the case of Ash v. Ash, 8 *Leg. Int.* 54, s. c. 1 *Phila. R.* 176.

" A third reason is, that this trust is special, and as such, would not be executed by the statute so long as its special purposes required that it should be maintained. But the terms of the trust, especially the clause against anticipation, require its administration by the trustees, so long at least as Mrs. Dubs should live; and therefore, the use was never executed in her. Nor, if we regard

[Dubs *v.* Dubs.]

this as a trust for the use of Mrs. Dubs, for life, remainder to her heirs in fee, will the rule in Shelly's Case stand in the way of the plaintiffs; because, separate uses for married women, to the exclusion of their husbands, belong pre-eminently to the class of cases in which the legal will yield to the actual intent: Burchett *v.* Durdant, 2 *Vent.* 311; Luddington *v.* Kime, 1 *Ld. Raymond* 203; Doe *v.* Laming, 2 *Burr.* 1100; Perrin *v.* Blake, *Hargrave's Law Tracts* 429.

" Nor does the case of Auman *v.* Auman, 9 *Harris* 344, make against this view; for there, there was neither a trust nor a separate use.

" Whether the husband of a feme *cestui que trust,* could, under any circumstances, have curtesy in the use where it is not executed, might be questioned, on the authority of 1 *Saunders on Uses and Trusts* 66; where it is laid down that, prior to the statute of uses, there was no curtesy of a use; but I do not deem it material now to go into that.

" Judgment is entered on the case stated in favour of plaintiffs."

To reverse this judgment, the defendant below sued out this writ, and here assigned the same for error.

*Watson,* for the plaintiff in error.

*C. E. Du Bois,* for defendants in error.

The opinion of the court was delivered by

LOWRIE, C. J.—Our law authorizes a married woman to dispose of her separate property by will; and our intestate law of 1833 says that her estate, not so disposed of, or *otherwise* limited by marriage settlement, shall descend to her children, saving to her husband " his right as tenant by the curtesy; which shall take place, although there be no issue of the marriage, in all cases where the issue, if any, would have inherited."

Again, it says, of her real estate, not so disposed of, that it shall descend subject to the estate and interest above given to the husband. And the law of 11th April 1848, § 10, says that her separate real estate shall descend according to the intestate laws, provided that this shall not " be deemed or taken to deprive the husband of his right as tenant by the curtesy."

These provisions are very plain and just: yet we sometimes forget them by suffering our minds to be led away by the traditions of the English law, so readily found in our text books. Our law is the same for both legal and equitable estates; and dower and curtesy belong to them both. If the descent is regulated by will or marriage settlement, the statutory descent does not apply; if otherwise, it does. The presumption is of course in favour of the legal rule of descent, and those claiming otherwise must show

[Dubs v. Dubs.]

that they have a written title from the deceased to themselves: 26 *State R.* 132. Where a title is in fee simple, legal or equitable, all expressions in it attempting to set aside the statutory order of descent, without providing a different one, must go for nothing: 19 *State R.* 44, 371; 20 *Id.* 300; 28 *Id.* 93.

In pursuance of these principles we have several times decided, that property held in trust for the separate use of a married woman and her heirs or representatives, descends, on her death, according to our intestate laws, and that they define the interest which the surviving husband shall take: 23 *State R.* 30; 24 *Id.* 253, 329.

This cause ought, therefore, to have been decided in favour of the defendant below. The estate is given in trust for the wife and her heirs, with directions that it shall be for her separate use, without any power in him or her to aliene or charge the same, and with no word relative to descent except the word heirs. It is in form an equitable fee, and in substance it is a fee, legal or equitable; and there is nothing to prevent its descent as a fee.

This view of the case prevents us from discussing the question concerning the validity or effect of the trust, and some others that are supposed to be connected with it.

> Judgment reversed, and judgment is here entered in favour of the defendant below, with costs, and the record is remitted.