## D. W. RANK v. KATE E. RANK.

ERROR TO THE COURT OF COMMON PLEAS OF MONTOUR
COUNTY.

Argued February 28, 1888—Decided April 30, 1888.

1. A tract of land was conveyed to a wife to hold unto herself, "her heirs and assigns exclusively of her said husband." By her will she devised the rents and profits of the land during the life of her husband and the proceeds of its sale at his death to her son and daughter. *Held :*
That, at the death of the wife the land passed subject to the curtesy estate of her husband.

2. It is folly for one to convey an absolute estate, and at the same time attempt to impose conditions; the two things are inconsistent and cannot stand together: per Mr. C. Justice GORDON.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 350 January Term 1887, Sup. Ct.; court below, No. 35 February Term 1885, C. P.

On January 9, 1885, assumpsit was brought by Kate E. Rank against Daniel W. Rank, to recover upon certain notes made by the defendant to the plaintiff, and upon a book account.

At the trial on December 23, 1886, before SITTSER, P. J. 44th district, holding special term, the plaintiff having closed her case with proof of a note dated September 27, 1880, for $100, made by the defendant, upon which $75 with interest from date was claimed; another of like form dated April 24, 1882, for $100, and a book account for $267.74, the defence made thereto disclosed the following facts :

On February 26, 1844, John McGinness, "in consideration of the sum of one dollar and love and affection which he beareth to his daughter," conveyed to Catharine Rank, intermarried with Joseph Rank, of Limestone township, a farm made up of two tracts of land in said township, the habendum of the deed being as follows:

To have and to hold the said two tracts of land heredita-

ments and premises hereby granted and released or mentioned or intended so to be with the appurtenances unto the said Catharine Rank, her heirs and assigns exclusively of her said husband to the only proper use, benefit and behoof of her, the said Catharine Rank, exclusively as aforesaid her heirs and assigns as aforesaid forever.

Catharine Rank died December 31, 1879, testate, leaving her husband, Joseph Rank, and three children, James C. Rank, Kate E. Rank, the plaintiff and Daniel W. Rank, the defendant, and by her will, duly admitted to probate and letters thereon issued to D. W. Rank and Kate E. Rank, executors, directing that her said real estate should be sold by her executors after the decease of her husband, and the proceeds thereof with the rents and profits previous to the sale, to be equally divided between said D. W. Rank and Kate E. Rank.

The defendant then testified and introduced evidence to sustain the claim that the notes were accommodation notes given by him to enable the payee to borrow money to pay to him on account of his share of the income of real estate held by them in common under the will of their mother, and that the goods and money represented in the account had also, so far as received, been so supplied. The plaintiff denied that she and the defendant were tenants in common of the farm, alleging, on the contrary, that their father Joseph Rank, who was still living, held the farm as tenant by the curtesy, and that under an arrangement with him she was to receive "one half of the income of the place, to use for my own use and for running the house, whatever was necessary."

The court, SITTSER, P. J., after reviewing the testimony, charged the jury as follows :

It is for you, of course, to find, under evidence what are the facts in this case. [In order to determine the situation of these parties and their relation to this property, it is necessary for the court to instruct you as to the law arising upon the deed and will of Catharine Rank, the mother of the plaintiff and of the defendant. In 1844 a deed was made to Catharine Rank of this farm. Under that deed she and her husband lived upon the property and had possession of it from the year 1844 down to the time of the death of Catharine Rank. It is claimed on

the part of the plaintiff—and of the defendant, too—that the deed vested the property in this farm in Catharine Rank; but the defendant claims that the effect of that deed was such as to deprive Joseph Rank, the husband of Catharine Rank, of any title, as tenant by the curtesy, in that property. The usual rule is that where the wife is the owner of real estate and dies leaving a husband to survive her, that husband has a life estate in that property; that after the death of the wife he is entitled to the possession of the property during the period of his natural life, and may use and have control of the property for that length of time; and we say to you that this deed to Catharine Rank, given in evidence here, does not interfere with the application of that general principle of the law; and that Joseph Rank, upon the death of his wife Catharine in 1879, had a life-estate in that property, had a right to use and occupy and possess that farm for the remainder of his natural life, and would be entitled to have and to enjoy the produce of the farm, unless he parted with that right by his own contract; so that the defence set up by the defendant, that he was the owner or joint owner of the crops raised upon the farm during the possession of Joseph Rank and after the death of the defendant's mother, cannot avail him, unless he shows that he acquired these crops upon some contract or arrangement with Joseph Rank, the owner of the farm.][1] . . . .

The counsel for the defendant have requested me to say to you:

1. That, by the deed of John McGinness to Catharine Rank, in evidence, the plaintiff and the defendant were tenants in common.

Answer: This is not affirmed, for we have already explained to you that our construction of the deed gives a life-estate to Joseph Rank, the surviving husband of Catharine Rank, and that the plaintiff and the defendant will not become tenants in common in possession of this property until after the death of Joseph Rank.[2]

The verdict of the jury was in favor of the plaintiff for $431.05. A rule for a new trial having been discharged and judgment entered on the verdict, the defendant took this writ assigning for error, inter alia:

Opinion of the Court.

1. The part of the charge embraced in [ ][1]
2. The answer to the defendant's point.[2]

*Mr. D. W. Rank* and *Mr. James Scarlet,* for the plaintiff in error:

The rule in Pennsylvania is, that when the intention of the grantor is to exclude the tenant by the curtesy, and such intention is clear, he will then be excluded and his curtesy will be barred: Cochran v. O'Hern, 4 W. & S. 99; Stokes v. McKibbin, 13 Pa. 268; Rigler v. Cloud, 14 Pa. 363; Ege v. Medlar, 82 Pa. 100; Faries' App., 23 Pa. 29; Washb., R. P., 330. The bequest of the use of the land to Kate E. Rank and D. W. Rank, was a devise of the land itself: Parker's App., 61 Pa. 478.

*Mr. Edward Sayre Gearhart,* for the defendant in error:

At the death of Catharine Rank, her husband possessed all the legal requisites of a consummated curtesy estate in the land conveyed to her, and as such he was entitled to rents and profits during his life: 1 Washb., R. P., §§ 102, 104; Torbert v. Twining, 1 Y. 432. The word "exclusively" is manifestly insufficient to exclude the tenant by the curtesy; any actual intent would have to give way to the legal intent: Auman v. Auman, 21 Pa. 344; Reifsnyder v. Hunter, 19 Pa. 44; Dubs v. Dubs, 31 Pa. 154; Johnson v. Fritz, 44 Pa. 452; Van Rensselaer v. Dunkin, 24 Pa. 253.

OPINION, MR. CHIEF JUSTICE GORDON:

This was an action of assumpsit brought by the plaintiff, Kate E. Rank, against the defendant, Daniel W. Rank, for the recovery of a balance alleged to be due her on two promissory notes, a book account, and money loaned. The case presents no legal peculiarity except that arising from the character of the defence. This defence was that the plaintiff's charges, as well as the notes on which she was the alleged accommodation indorser, created no obligation on part of the said defendant, and ought not to have been charged against him, forasmuch as the said charges were made for produce raised on a farm in which they, the said parties, were tenants in common, and that the money used to lift the said notes, as

well as any other money advanced by the plaintiff to the defendant, was, in like manner, the product of grain and other marketable articles grown upon the said farm, and of which he, the defendant, was the owner of one half; that the said advancements were on account of his share of the products aforesaid, and that he owed her nothing.

The claim thus presented originates, according to the defendant's theory, in manner following : On the 26th of February, 1844, John McGinness executed to his daughter Catharine, the mother of the contestants, intermarried with Joseph Rank, a deed for the farm now in controversy, in which deed there is said to be a separate use clause, in the following language: "Witnesseth that the said John McGinness . . . . doth grant, bargain and sell," etc., "unto the said Catharine Rank, and to her heirs and assigns exclusively of her said husband, all that messuage," etc. Catharine Rank, the grantee named in the deed above mentioned, died on the 31st of September, 1879, leaving her husband, Joseph Rank, father of the plaintiff and defendant, in full life, and the real estate devolved on her two children, Daniel W. and Kate E., by devise in fee. Now Joseph Rank claims the possession of the property as tenant by the curtesy and the plaintiff holds under him. If this claim is lawful, the defence fails, for it is founded upon the alleged right of the defendant to have one half of the net proceeds of the farm as tenant in common with his sister. What then is the status of Joseph Rank? The court below sustained his claim, and so ruled this branch of the case against the defendant.

In this we think the learned judge was right. We cannot agree that there shall be a departure from the statutory rule of succession to realty unless it is very clearly made to appear that the grantor so intended. He perhaps intended a separate use for his daughter during her life; but even this is doubtful, for, in the first place, he created no trust for her protection, and we may well suppose that he did not intend she should till the farm without her husband's help, or that the fruits thereof when produced by their joint labor should be for her exclusive use. In the second place he certainly did intend to vest the fee in her alone, and if we adhere to his words, he intended nothing else. The grant was to her and her heirs

and assigns "exclusively of her said husband." But from what is he excluded? Clearly from the fee. McGinness did not intend to vest a joint estate in the husband and wife, but she was to take as though she were sole. But, not to assume what was not mooted in the court below, we will take the language of the deed to mean a separate use, and it could mean nothing more. What then? She was vested with the fee simple; that gave her the separate use. But the fee passed to her with all its incidents, and curtesy was one of those incidents. It is folly for one to convey an absolute estate and at the same time attempt to impose conditions; the two things are inconsistent, and cannot stand together. From this case we may learn the futility of such an attempt, for it is unquestionable that Mrs. Rank might have conveyed to her husband, or any one else the next hour after she received the delivery of the deed. It is urged however, that the grantee and her heirs were to take exclusively of her husband, but this idea seems to ignore the fact that the word "heirs" as used in the deed, does not designate persons who are to take, but is a word of limitation only, and used to describe the character of the estate conveyed to her; that is, a fee simple; an estate unincumbered by conditions of any kinds.

Dubs v. Dubs, 31 Pa. 149, has in it the elements of a better case for the support of the proposed theory than the one in hand, but even it was found wanting of that which was necessary for the exclusion of the husband's rights. The gift in that case was "in trust for my daughter Adelaide, and her heirs," and as to the annual produce, "in trust for the sole and separate use of my said daughter Adelaide, without, and free from the control of any husband to whom she may be married, and without any power of her, or of her and her husband to alien or dispose of the estate, or principal of the money by deed, mortgage, or any other instrument or contrivance." Here is a separate use trust, and also an express prohibition of the power of alienation, neither of which is to be found in the deed of John McGinness to his daughter Catharine, and yet we held this to be an equitable fee, and that there was nothing to prevent its descent as a fee. Observe how completely the principle here announced covers the present proposition: Adelaide had but an equitable estate, which by the trust was put

beyond the reach of her husband, and at her death the fee vested in her heirs and the equity merged, yet was her husband held to be entitled to curtesy.

Faries' Appeal, 23 Pa. 29, was a case involving the distribution of personalty; nevertheless, in principle it is much the same as the one cited. There was a devise of both real and personal property to a married woman for her separate use with the provision "that the same shall not be liable for any contracts of her present or any future husband, or subject to curtesy, or any life estate, or of any marital rights whatever of any such husband, unless she shall see fit to give him benefit or advantage therein by will or writing in the nature of a last will." A provision such as this would seem to be sweeping enough to exclude the husband from every shadow of right in his wife's property; nevertheless, we held that as the donee took an absolute title, the separate use clause did not, on her death, prevent the husband from claiming as her distributee. Or, as we said, per Mr. Justice LOWRIE, "the attempt to set aside the statutory order of descents, without also providing a different order, is necessarily ineffectual."

These cases show conclusively that even a separate use trust, without more, cannot deprive the husband of his curtesy, or of his right as distributee in his deceased wife's property. In the case in hand, however, there is no trust of any kind, but an absolute legal estate, which must necessarily, at her death, pass to her heirs or legatees incumbered with the husband's curtesy. Such being the case the defence, based on the defendant's interpretation of the deed, failed, and what remained was for the jury, who were guided by instructions from the court which seems to us unimpeachable.

The judgment is affirmed.