ELIZA CARSON ET AL. v. ADAM FUHS ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 6, 1889—Decided January 6, 1890.
[To be reported.]

(a) Husband and wife conveyed certain real estate of the husband to a trustee, for the use of said wife " during her natural life, and at her decease then to her heirs in fee, share and share alike, and in the meantime to allow and permit her to receive for her own use the rents, issues thereof, subject to the taxes and costs of executing this said trust."

1. Even if this deed had created a valid trust, such as to prevent the legal estate from vesting in the wife and to withhold from her the power of alienation, she would have had under it an equitable estate in fee, en-

### Statement of Facts.

titling her husband upon her death, to possession as tenant by curtesy; wherefore, during his life her heirs could not recover the land from one to whom she and her husband conveyed it before her death.

2. But the trust specified in the deed was a passive one merely; the trustee having no active duties to perform, and there appearing no intention to create a separate use trust, and no purpose to be subserved in keeping the declared trust alive, the statute of uses executed it and the wife became seised, under the rule in Shelley's Case, of a legal estate in fee, with power to alien the same.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 229 October Term 1889, Sup. Ct.; court below, No. 461 April Term 1887, C. P. No. 2.

On April 2, 1887, a summons was served in an action of ejectment brought by Eliza Carson and others against Adam Fuhs and others, to recover the undivided ten elevenths of three lots of ground in the city of Allegheny. Issue.

At the trial on December 14, 1888, the following facts were shown:

On July 20, 1858, Stewart Hamilton became invested with the title in fee-simple to the whole of the property in controversy. On January 18, 1867, Stewart Hamilton, together with his wife, Isabella, executed and delivered to their son, James Hamilton, a deed whereby, for the expressed consideration of " one dollar and natural love and affection and better maintenance of the parties for whose use this deed is made in trust," etc., they conveyed said property to him, his heirs and assigns, " in trust, nevertheless, for the use of the said Isabella Hamilton, wife of the said Stewart Hamilton, during her natural life, and at her decease then to her heirs in fee, share and share alike, and in the meantime to allow and permit her to receive to her own use the rents, issues thereof, subject to the taxes and the costs of executing this said trust."

On October 30, 1867, James Hamilton made a deed, designating himself as " trustee of Isabella Hamilton and her heirs," and purporting, in consideration of one dollar, to reconvey the property to Stewart Hamilton and his heirs. A part of the property, on February 25, 1868, was conveyed by Stewart

---

* See Peoples S. Bank v. Denig, preceding.

Hamilton and Isabella, his wife, for the consideration of $3,000, to James Hamilton, who afterwards conveyed the same to the defendant, Adam Fuhs. The remainder of it was sold and conveyed by Stewart and Isabella Hamilton to Adam Fuhs by two deeds, dated respectively in 1869 and 1874. Fuhs took possession of the several parcels thus purchased by him and made valuable improvements on each of them.

Isabella Hamilton died July 8, 1885, intestate, and leaving to survive her her husband, Stewart Hamilton, and ten children and one grandchild as her heirs at law. All of said heirs except the oldest son, James Hamilton, named above, were joined as plaintiffs in this action. The surviving husband, Stewart Hamilton, was still living at the time of the trial.

At the close of the testimony the court, WHITE, J., instructed the jury to find for the plaintiff for the undivided ten elevenths of the property described in the writ, subject to the opinion of the court on the question of law reserved, to wit: Whether, on the deeds put in evidence, it being admitted that Stewart Hamilton, the husband of Isabella Hamilton, is still living, the plaintiffs are entitled to recover?

On February 2, 1889, the reserved question having been argued, the following opinion was filed, WHITE, J.:

The plaintiffs are children of Mrs. Isabella Hamilton, deceased, who was wife of Stewart Hamilton, and claim under a deed of trust executed by Stewart Hamilton and wife to their son James Hamilton, dated January 18, 1867, for three lots of ground in Allegheny City. The deed is to James Hamilton, his heirs and assigns, in fee-simple, with covenant of general warranty, "in trust for the uses hereafter mentioned," in consideration of "one dollar and natural love and affection and better maintenance of the parties for whose use this deed is made in trust," etc. The trust is in these words: "In trust nevertheless for the use of the said Isabella Hamilton, during her natural life, and at her decease then to her heirs in fee, share and share alike, and in the meantime to allow and permit her to receive to her own use the rents, issues thereof, subject to the taxes and costs of executing this said trust."

Nine months thereafter, October 30, 1867, James Hamilton conveyed back the premises to Stewart Hamilton, describing

himself as "Trustee of Isabella Hamilton, and her heirs," in consideration of one dollar, but making no reference to the trust deed, or his title, and conveying in the usual form, as if the property was his own, with general warranty, signing his name simply, James Hamilton. Stewart Hamilton and Isabella his wife, subsequently, by deeds dated February 25, 1868, and January 12, 1869, conveyed two of the lots to James Hamilton, who conveyed to Adam Fuhs, and then by deed of April 30, 1874, Stewart Hamilton and Isabella his wife, conveyed the remainder to Adam Fuhs, who thus claims title to the whole. In none of their conveyances is there any reference to the trust deed from Stewart Hamilton and James Hamilton. Isabella Hamilton died July 8, 1885, leaving ten children, and her husband, Stewart Hamilton, who is still living.

The question of law reserved is, what title did Isabella Hamilton take by the trust deed? If she took merely a life estate, the plaintiffs are entitled to recover; if a fee, either under the rule in Shelley's Case, or by virtue of the statute of uses, they are not.

I think no question of estoppel can be raised against the plaintiffs during the life of their mother. All the deeds were duly recorded before Adam Fuhs bought. The trust deed was directly in the line of his title, and he had constructive notice of it. He paid his purchase money and made improvements at his own risk.

The rule in Shelley's Case is firmly established as a law of this state. While it is difficult to reconcile some of the decisions, the rule itself has never been denied, and no avowed effort made to defeat or evade it. The rule briefly stated is this : When by deed or will an estate in land is given to one for life, and at his death the remainder to his heirs in fee, the estate of the life-tenants is enlarged to a fee ; the two estates are merged in one, and the first taker takes the whole.

The true test in the application of the rule is, did the grantor or donor intend that the remaindermen should take as heirs of the life-tenant? "The thing to be sought for is not the persons who are directed to take the remainder, but the character in which the donor intended they should take:" Guthrie's App., 37 Pa. 12; nor the intention that the first taker should have only a life estate; for that intention must be overthrown, if

apt words are used to bring the case within the rule. The words " heirs " may be limited or modified by other unequivocal expressions in the deed or will; and other words than that of "heirs " may have the effect of bringing the case within the rule. " Any form of words sufficient to show that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker will enlarge the estate of the life-tenant into a fee by implication : Potts's App., 30 Pa. 170 ; McKee v. McKinley, 33 Pa. 93 ; Dodson v. Ball, 60 Pa. 493 ; Yarnall's App., 70 Pa. 341.

If the deed we are considering had been directly to Isabella Hamilton, "during her natural life and at her death then to her heirs in fee, share and share alike," there could be no doubt she would have taken a fee. The added words, " share and share alike " are not sufficient to take it out of the operation of the rule : Physick's App., 50 Pa. 136 ; Ogden's App., 70 Pa. 501. But the rule in Shelley's Case does not apply, unless both estates, for life and in remainder, are of the same quality, both legal or both equitable. Here the legal estate under the trust deed, is in the trustee, and Isabella Hamilton had only an equitable life estate. So had the remaindermen ; but under the statute of uses, it became an executed trust as to them, and they took the legal estate in remainder, if the first taker had only a life estate.

Was it a dry or executed trust, also, as to her, so that she took the legal estate under the statute of uses ? A dry, naked trust, where no duties are to be performed by the trustee, is a passive trust, and as a general rule, is executed by the statute. Active trusts where important duties are confided to the trustee, such as renting and managing the estate, investing money, distributing the proceeds, etc., are not within the operation of the statute. Others, not strictly active but passive trusts, will be saved where, (a) it is necessary for the protection of a married woman; (b) for the protection of a spendthrift child; (c) to support contingent remainders; (d) or to serve some other useful and lawful purpose. As the trustee had no duties to perform under this trust, it falls under the second class, passive trusts. The only ground for contending that it is saved from the operation of the statute is, that it was for the protection of a married woman.

Mrs. Isabella Hamilton was the beneficiary, and the only one intended to be provided for by the deed of trust. Although the consideration is stated as, "one dollar and natural love and affection and better maintenance of the parties for whose use this deed is made in trust," yet the only person mentioned as interested in the trust, or whose maintenance is provided for, is Isabella Hamilton. The trustee is to "allow and permit her to receive to her own use the rents, issues thereof, subject to the taxes and cost of executing this said trust."

The object of creating a trust for a married woman is to save the property from the debts or control of her husband. Trusts for this purpose, or for one in immediate contemplation of marriage, will be sustained. "When an active trust is created, to give effect to a well defined purpose of a testator in reference to his family, the trust must be sustained whether the cestui que trust is sui juris or not:" Barnett's App., 46 Pa. 392; Earp's App., 75 Pa. 119. But even an active trust ceases when there is no longer any purpose to serve by keeping it alive. If the trust is simply for the benefit of a married woman, or one in contemplation of marriage, it falls when she becomes discovert, and is not revived by a subsequent marriage: Bush's App., 33 Pa. 85; Earp's App., supra. Dodson v. Ball, 60 Pa. 492, is where a single woman conveyed land to a trustee in trust to permit her to occupy, manage and rent her premises and take the income for her sole and separate use for life and upon her decease to convey the same to such person as she might appoint, or, in default of a will, to such persons as would be entitled under the intestate laws, etc. She afterward married and her husband died. By bill she asked for reconveyance. It was held an executed trust and that she was entitled to reconveyance. The opinion of the court concludes: "The trust being passive, and the trustees not being needed to protect any other interest, Mrs. Dodson being sui juris and competent to exercise any power which had been vested in the trustees, the ulterior trust not being intended to protect any special interests, but being exactly commensurate with her own power and estate as absolute owner, there is no proper or useful purpose to uphold the trust and it consequently fell when she became discovert." This case was not strictly a passive trust, for there were certain duties to be performed by the trustees. But it fell with discoverture.

Opinion of Court below.

Trusts for the sole and separate use of married women have been sustained in order to effectuate the object of the trusts ; that is, save the property from the control or debts of their husbands. When the husband dies, the trust falls because there is no longer any necessity for it. Our married woman's act of 1848 secures to married women the entire control and management of their separate estate and protects it from the debts and liabilities of their husbands. It accomplished all that can be accomplished by a trust for that purpose. Hence, such a trust is no longer of any necessity or practical advantage, and should fall, or be considered an executed trust, as in cases of discoverture. The trust deed in this case was executed in 1867, nineteen years after the passage of the act of 1848. It is, as we have seen, solely for the benefit of Mrs. Isabella Hamilton, then a married woman. If the title had been made directly to her she would have taken the property entirely free from the control, debts and liabilities of her husband. The trustee was simply the depository of the legal title, with no duties whatever to perform. It was a dry, naked trust. Mrs. Hamilton was to receive the rents and issues, subject to taxes and expenses, during her natural life, and at her death, then the property to go to her heirs. As there was no useful purpose to be served by the trust, it was executed by the statute of uses and fell still-born at its birth.

The trustees had no duty to perform during her life, or at her death. The trustee was not required to convey. The property went to the heirs of Mrs. Hamilton by virtue of the trustee's deed itself. Both estates, for life and in remainder, being legal, they merged, and Mrs. Hamilton took the fee, under the rule in Shelley's Case. It follows that Mrs. Hamilton and her husband could convey the fee. They might have done that, perhaps, without a reconveyance by the trustee. But after such reconveyance, and deeds for the fee-simple duly executed by Mrs. Hamilton and her husband for the whole property, her children have no claim or interest in the property.

And now, January 26, 1889, the question of law reserved is decided in favor of defendants, and it is ordered that judgment be entered in favor of defendants, non obstante veredicto.[2]

Judgment having been entered accordingly, the plaintiffs took this appeal, assigning the order entering said judgment as error.

*Mr. R. E. Stewart*, for the appellants :

1. The rule in Shelley's Case is not applicable to the deed of settlement in evidence in this case, for two reasons. In the first case, the intention of the settler, gathered from the whole deed, shows that the word "heirs," in the clause declaring the trust, was used not in a technical sense, but as descriptio personarum, designating the children of his wife Isabella, begotten by himself. Such an intention is as much the governing rule of construction in a deed as in a will: Phillips's App., 93 Pa. 45: Furthermore, the limitation of the remainder in this case shows the intention that the remaindermen should take as the stock of a new inheritance, and not as heirs of a life-tenant. The remainder was to vest in the heirs, in fee, share and share alike, being an instance of a distributive remainder with superadded words of limitation, which converts the word "heirs" into a word of purchase: Smith on Executory Interests, § 488. See also Husbands on Married Women, 255 ; Huss v. Stephens, 51 Pa. 282 ; Rogers v. Smith, 4 Pa. 93.

2. The second reason is, that the life-estate of Isabella Hamilton was an equitable one, while the estate in remainder to her heirs was legal. In such case, there could be no union of the two estates ; to effect this, both must be legal or both equitable : Little v. Wilcox, 119 Pa. 439. When the intention is to create a trust for the separate use of a married woman, the legal estate will vest in the trustee, although he has no active duties to perform, and the statute will not execute it in the cestui que trust: Perry on Trusts, § 310, et seq. ; Husbands on Married Women, §§ 280, 281, 327 ; Lancaster v. Dolan, 1 R. 231 ; Pullen v. Rianhard, 1 Wh. 514. No technical words are requisite to create a separate use ; any words indicating that intention are sufficient: Jamison v. Brady, 6 S. & R. 465 ; Tyson's App., 10 Pa. 220 ; Snyder v. Snyder, 10 Pa. 423 ; Heck v. Clippenger, 5 Pa. 385 ; Lancaster v. Dolan, 1 R. 231 ; Thomas v. Folwell, 2 Wh. 11.

3. Again ; a gift or grant for the use of a married woman, expressed to be for her support or maintenance, creates a separate use : Darley v. Darley, 3 Atk. 399 ; Lancaster v. Dolan, 1 R. 231 ; Markley v. Singletary, 11 Rich. Eq. 393 ; Cape v. Cape, 2 Y. & C. Ex. 543 ; Tyrrell v. Hope, 2 Atk. 558. And a gift or grant from the husband himself to the wife, ipso facto im-

plies such use: Perry on Trusts, §§ 648, 651; Whitten v. Whitten, 3 Cush. 191; Brown v. Kimbrough, 51 Ga. 35; Monniger v. Duke, 53 Ga. 277; Steel v. Steel, 1 Ired. Eq. 452; Fisher v. Filbert, 6 Pa. 61; Thomas v. Folwell, 2 Wh. 11.

4. The deed here in question combines all the elements of a separate use trust, and, moreover, so declares its purpose as to impose a restraint upon alienation, even under the English doctrine, which does not imply it in a simple separate use. The wife therefore had no power of alienation: Lancaster v. Dolan, 1 R. 231; Thomas v. Folwell, 2 Wh. 11; Wallace v. Coston, 9 W. 137; Penna. Co. v. Foster, 35 Pa. 134; Wright v. Brown, 44 Pa. 224; Maurer's App., 86 Pa. 380. The trust was irrevocable: Rogers v. Smith, 4 Pa. 93; Maurer's App. supra; Fellows's App., 93 Pa. 470; Twining's App., 97 Pa. 36. The conveyance by the trustee in derogation of the trust was inoperative: Rife v. Geyer, 59 Pa. 393. Such a trust should be favored and upheld: Earp's App., 75 Pa. 119.

*Mr. William S. Pier* (with him *Mr. S. A. Johnston*), for the appellees:

1. Since the act of 1848 a trust for a married woman will be executed by the statute, when the trustee has no active duties to perform, unless it is necessary to protect the married woman from her husband: Little v. Wilcox, 119 Pa. 448; and unless it appears also that the donor's intent was to raise such a trust. Both these essentials are lacking in the present case. Neither the deed nor any other evidence shows them, or either of them; rather the contrary.

2. The phrases in the limitation clause referred to in the argument for the plaintiffs, are simply verbose expressions, the effect of which is precisely similar to that of a limitation "to the use of Isabella Hamilton and her heirs." The language of this court in Dodson v. Ball, 60 Pa. 493, is applicable here, though the words of this trust deed are more easily interpretable as equivalent to the word "heirs," than the words of the deed in that case. This case more nearly resembles Kinsel v. Ramey, 87 Pa. 248.

3. The evidence discloses that the husband of Isabella Hamilton is still living. For this reason the plaintiffs cannot recover, since he is entitled to his life-estate by curtesy: Dubs

v. Dubs, 31 Pa. 149; Rank v. Rank, 120 Pa. 191; Challis on Real Prop., *134. Under these authorities the judgment should be affirmed, even if it should be held that the rule of Lancaster v. Dolan, 1 R. 231, applies, and that Mrs. Hamilton had no power to convey, because in the deed of 1867 no such power was expressed.

4. A fourth reason why the judgment is right is found in the act of May 11, 1874, P. L. 131, authorizing courts to confirm titles of parties to real estate sold or conveyed by trustees of married women, without leave of court. All the facts necessary to give the Common Pleas court jurisdiction under it, appear in this case, if this court should hold that the deed of 1867 created a sole and separate use trust, and all parties in interest are before the court. An equitable defence is permissible in this state.

OPINION, MR. CHIEF JUSTICE PAXSON:

Under any view we may take of this case, the plaintiffs cannot recover in this action. If they are right in their contention that the deed to James Hamilton created a valid separate use trust in favor of his mother, Isabella Hamilton, they are not entitled to the possession of the real estate in controversy, for the reason that the husband of Isabella Hamilton is still living, and entitled to his curtesy therein. Mrs. Hamilton having an equitable estate in fee, her husband would be entitled to his life-estate: Dubs v. Dubs, 31 Pa. 149; Rank v. Rank, 120 Pa. 191. We might well affirm this judgment without more, but, as we have the whole question before us, we prefer to decide it now, to prevent further litigation in the future.

The trust contained in the deed from Stewart Hamilton et ux. to James Hamilton is as follows: " In trust, nevertheless, for the use of said Isabella Hamilton, wife of the said Stewart Hamilton, during her natural life, and at her decease then to her heirs in fee, share and share alike, and in the meantime to allow and permit her to receive for her own use the rents, issues thereof, subject to the taxes and costs of executing this said trust."

The question is, what estate did Mrs. Hamilton take under this conveyance? The contention of the plaintiffs is that she

took only a life-estate; that the deed created a separate use trust in her favor, which must be supported for her protection. It is to be noticed that the language does not create a technical separate use trust, nor is there anything from which we can draw the inference that a separate use trust was intended by the grantors, or even contemplated by them. It must not be overlooked that the deed to James Hamilton was made by Mrs. Isabella Hamilton and her husband, in trust for the said Isabella. Had there been a conveyance to her directly, instead of to a trustee, there can be no doubt that it would have passed the fee. The added words, "share and share alike," referring to the "heirs," would not have been sufficient to take it out of the rule: Physick's App., 50 Pa. 136; Ogden's App., 70 Pa. 501. Does the fact that a trust was interposed make any difference? This depends upon the character of the trust. If it is a separate use trust, or one which it is necessary to preserve for any purpose, Mrs. Hamilton's interest would be limited to a life-estate. As was said by our Brother STERRETT in Little v. Wilcox, 119 Pa. 448: "A trust is never executed by the statute when its preservation is necessary, either for the protection of a feme covert, spendthrift child, or to support a contingent remainder, or to serve some other useful and lawful purpose." We see no such purpose to serve in this case. It is not, as before observed, a separate use trust in terms. It provides no protection or restriction which is not given by the act of 1848; and while separate use trusts may be created since the passage of that act, and may often be very useful to protect a woman from the importunities of her husband, or from her own weakness, we are not disposed to strain a point to create such trust by mere implication. The trustee in this case had no active duties to perform; it is a passive, dry trust, with no interest to guard, no rights to protect. In such case, the cestui que trust is entitled to a reconveyance of the legal title; equity will consider that done which ought to be done, and declare the legal title in Mrs. Hamilton. It then comes within the rule in Shelley's Case, and the life-estate and remainder coalesce, the effect of which is to give the fee to Mrs. Hamilton. We need not pursue the subject further, in view of the careful and elaborate opinion of the learned judge below.

Judgment affirmed.