## Leh's Estate

*Frank M. Reber,* for exceptants; *Arthur L. Swartz,* contra.

LLOYD, J., April 20, 1931.—The above estate is now before us upon exceptions filed to the report of an auditor of the account of Arthur L. Swartz, trustee, to make sale and distribution of the real estate of Dennis Leh, deceased.

The main question before the auditor and the only one stressed at the argument is that relating to the distribution of the balance in the hands of the trustee.

The question arises under the third paragraph of the will of Dennis Leh, who died May 4, 1929, and which reads as follows:

"I give and devise the income only, of all my estate, real, personal and mixed, to my children herein named, after all the necessary expenses for the proper upkeep of the properties are paid the residue of such income shall be divided, equally, share and share alike, between my three daughters and my son, during their natural lives, namely:

"Josephine, now Mrs. William Nesbit; Mary, now Mrs. Charles Walker; Debby, widow of the late Theodore Hendricks, and my son, Harry D. Leh, said residue of said income shall be divided between them in four equal shares.

"After the death of my aforesaid children, the balance of the estate shall be divided between the heirs of my said children in four equal shares."

The auditor held that under the said devise the devisees therein took but a life interest in the said balance and are entitled to the "income only" arising out of the investment of the said balance, are not entitled to any part of the principal sum thereof and awarded the same to a trustee for the purpose of investment. The exceptants contend that the rule in Shelley's Case is applicable and that they are entitled to take the entire balance absolutely.

The rule in Shelley's Case is thus stated in the opinion of the court below by White, J., in the case of Carson v. Fuhs, 131 Pa. 256, 259, as follows:

"When by deed or will an estate in land is given to one for life, and at his death the remainder to his heirs in fee, the estate of the life-tenants is enlarged to a fee; the two estates are merged in one, and the first taker takes the whole."

The appeal in the case of Shapley v. Diehl, 203 Pa. 566, arose out of a case stated to determine the marketability of the title of real estate. It appeared that the father intending to convey a property to his son wrote on the back of the deed the following words:

"For value received, I hereby convey and transfer all my right, title and interest to the property within mentioned, to Joseph S. Shapley for the term of his natural life and at his death to his children or heirs."

The son contracted to sell the property and was met by the objection that he had but a life estate. The court below held that the rule in Shelley's Case did not apply and that the son had merely a life estate and accordingly entered judgment against the son. Upon an appeal entered by the son, the court reversed the judgment. Speaking through Mr. Justice Mitchell, it said:

"In determining whether the rule in Shelley's Case is applicable, the test is how the donees in remainder are to take. If as purchasers under the donor, then the particular estate is limited by the literal words of the deed, and the rule in Shelley's Case has no application. But if the remaindermen are to take as heirs to the donee of the particular estate, then what has been called the superior intent as declared in Shelley's Case operates and the first donee takes a fee, whatever words may be used in describing the estate given to him. 'The inheritance in remainder must be given to the heirs of the grantee of the estate for life, as heirs, or the rule has no applicability to the case. . . . It is always, therefore, a precedent question in any case to which it is supposed the rule is applicable whether the limitation of the remainder is made to the heirs in fee or in tail as such, and in solving this question the rule itself renders no assistance. It is silent until the intention of the grantor is ascertained:' Guthrie's Appeal, 37 Pa. 9.

"In construing the deed here we must, of course, be governed entirely by the language of the instrument itself. If by it a life estate only passed to appellant with a remainder in fee to his son, the latter cannot be divested in this proceeding by any subsequent declaration of the grantor however formal."

The case of Kemp *v.* Reinhard, 228 Pa. 143, is illustrative of the circumstances under which the rule is to be applied. It was there said:

"The rule in Shelley's Case is not a means of ascertaining the intention of a testator, nor is it one of the construction of a will. It is one of law, unbending in its application, when the intention of the testator is ascertained that the heirs of the devisee of a freehold estate are to take from the devisee qua heirs. When such intention is ascertained, the heirs take by descent from the devisee, and there is, therefore, vested in him an estate of inheritance: Doebler's Appeal, 64 Pa. 9; Shapley *v.* Diehl, 203 Pa. 566. 'It is, therefore, always a precedent question, in any case to which it is supposed the rule is applicable, whether the limitation of the remainder is made to the heirs in fee or in tail, as such, and in solving this question, the rule itself renders no assistance. It is silent until the intention of the grantor or devisor is ascertained. But if that intention is found to be that the remaindermen are to take as heirs of the grantee or devisee of the particular freehold, instead of becoming themselves the root of a new succession, the rule is applied, though it may defeat a manifest intention that the first taker should have but an estate for life. It is very carefully to be noted that in searching for the intention of the donor or testator, the inquiry is not whether the remaindermen are the persons who would have been heirs had the fee been limited directly to the ancestor. The thing to be sought for is not the persons who are directed to take the remainder, but the character in which the donor intended they should take. In the very many cases in which the question has arisen, whether the rule was applicable, the difficulty has been in determining whether the intention was that the remaindermen should take as heirs of the first taker or originally as the stock of a new inheritance:' Guthrie's Appeal, 37 Pa. 9."

The case of Lauer *v.* Hoffman, 241 Pa. 315, is of like effect. The court, speaking through Mr. Justice Brown, there said:

" 'The rule in Shelley's Case is never a means of discovering the intention. It is applicable only after that has been discovered. It is then an unbending rule of law, originally springing from the principle of the feudal system, and though the original reason of it, the preservation of the rights of the lord to his relief, primer seisin, wardship and marriage has passed away, it is still maintained as a part of the system of real property which is based on feudalism and as a rule of policy. It declares inexorably that where the ancestor takes a preceding freehold by the same instrument, a remainder shall not be limited to the heirs qua heirs, as purchasers. If given as an immediate remainder after the freehold, it shall vest as an executed estate of inheritance in the ancestor; if immediately after some other interposed estate, then it shall vest in him as a remainder. Wherever this is so, it is not competent for the testator to prevent this legal consequence by any declaration, no matter how plain, of a contrary intention. That is a subordinate intent which is inconsistent with, and must, therefore, be sacrificed to, the paramount one. Even if he expressly provides that the rule shall not apply—that the ancestor shall be tenant for life only and impeachable for waste—if he interpose an estate in trustees to support contingent remainders—or, as in this will, declare in so many words that "he shall in nowise sell or alienate, as it is intended that he shall have a life interest only," it will be all ineffectual to prevent the operation of the rule. No one can create what is in the intendment of the law an estate in fee and deprive the tenant of those essential rights and privileges which the law annexes to it. He cannot make a new estate unknown to the law.' "

The authorities are numerous, but enough has been shown to illustrate the requirements of the rule, the testimony to be applied, the circumstances under which it becomes operative and the reasons for its application. Careful research has failed to disclose a single conflicting authority. There are cases which upon first reading seem to indicate a varying tendency in the application of the rule; but a careful review thereof shows a consistent adherence to the principle above enunciated and that the seeming differences are due to difficulties in determining whether the remaindermen should take as heirs of the first taker or originally as the stock of a new inheritance or the use of alternative bequests or devises over in such a way as to destroy the manifest intent of the testator that the devisee was to be the source of the remaindermen's inheritance upon the death of such devisee, that is, that they were not to take by descent through the remaindermen but by devise from the testator. The present devise is not involved in any such complications. The devise here is that "after the death of my aforesaid children, the balance of the estate shall be divided between the heirs of my said children in four equal shares."

"To those words the law attaches a definite meaning. They are words of limitation and not of purchase. When used by a testator, the law presumes that he used them in their legal sense, that he intended not individuals but quantity of estate and descent. Whenever they are employed, therefore, the burden is thrown upon him who contends that they are words of purchase to rebut this presumption and to show that they were used in the particular grant or devise to designate persons. Undoubtedly, the word 'heirs' may be shown by its context to have been used in the sense of sons, daughters, children, etc.; and when it is so used the rule in Shelley's Case is inapplicable: Fearne on Remainders 188, 189; Smith on Executory Interests 479. But the cases abundantly show that the intent not to use the words in their legal sense must be unequivocal, 'that it must appear so plainly (to use the language of Lord Alvanley) that no one can misunderstand it.'" Guthrie's Appeal, 37 Pa. 9, 13, 14.

There is not a single word or phrase within the whole of the will to indicate "any limitation or provisions repugnant to the accepted technical word heirs." No trusts are imposed and nothing from which any inference could be made that the testator did not intend to use the word "heirs" in its strict legal sense.

When viewed in the light of the foregoing authorities it is clear that the present devise meets every requirement and falls squarely within the rule, and when subjected to the well established test, as indicated, there is nothing to take it out of the rule. In arriving at this conclusion, we attach no importance to the direction of the testator that the balance be awarded "in four equal shares," because it in no way controls the descent. Certainly it is not such a limitation or distributive modification as to make the word "heirs" a word of purchase. However, in our opinion, they indicate that the remainder was to descend to each set of heirs in precisely the same proportion as was devised to their parents.

The fact that the balance for distribution is money arising out of a sale of the realty has no bearing upon the issue at all. For "a gift of the income is a gift of the land itself:" Beilstein v. Beilstein, 194 Pa. 152. The said balance is distributable precisely as if it had remained realty.

The auditor is to be commended for the exhaustive report upon the controversial matters before him. It shows a careful consideration of the questions involved and a painstaking effort to arrive at just conclusions. His conclusions are based upon a review and a careful analysis of numerous authorities; but because we gather a different construction from the authorities and

654

arrive at different conclusions, we are constrained to differ from his legal conclusions as stated in the tenth, eleventh and twelve paragraphs of his conclusions of law.

The facts as found by the auditor are herewith adopted in their entirety as our findings of fact in this appeal. Likewise, his conclusions of law, excepting the tenth, eleventh and twelfth, in lieu of which we now state the following legal conclusion:

That Josephine Nesbit, Mary Walker, Debby Hendricks and Harry D. Leh, devisees of the income from the estate of the testator, took an estate in fee simple and are each now entitled to receive absolutely an equal share of the said balance.

And now, April 20, 1931, the exceptants' second, third and fourth exceptions to the auditor's report are hereby sustained, and it is ordered, adjudged and decreed that Joseph Nesbit, Mary Walker, Debby Hendricks and Harry D. Leh are each entitled to presently receive an equal share absolutely of the said balance and the same is hereby so awarded to them and each of them.

An exception is noted and bill sealed for the remaindermen and also for Frank M. Reber, guardian ad litem for Carroll Walker et al.

From C. M. Clement, Sunbury, Pa.