## Boshamer Estate

*Seth W. Watson, Jr.* and *Stradley, Ronon, Stevens & Young,* for accountant.

*J. Victor O'Brien,* for trustee.

*Hugh P. Connolly,* for Commonwealth.

SHOYER, J., June 29, 1962.—Henry M. Boshamer, also known as H. M. Boshamer, died September 13, 1960, not survived by a spouse or issue. He left a holographic will dated January 22, 1942, upon which letters of administration were granted to Clarence W. Boshamer, Cary C. Boshamer and Howard W. McClurken, accountants herein, by the register of wills on September 15, 1960, and additional letters of administration cum testamento annexo were granted by the register to the said accountants on May 11, 1961; proof of publication of the grant of the original letters was submitted and is hereto annexed.

The handwritten home-made will provides:

"Jan 22, 1942

Last Will & testament of

H. M. Boshamer

I bequeath all of my property real & personal to my mother, Carrie Barkley Boshamer as a trust fund to be administered as a trust fund by the Girard Trust Company Philadelphia Pa. The trust fund is to continue at my mother's death for the benefit of my two nephews Wilson Boshamer and Henry Boshamer, both now residents of Gastonia, N C.

signed H. M. Boshamer

witness

Mrs C. W. Boshamer, Jr."

\* \* \* \* \*

The statement of proposed distributions recites that Carrie Barkley Boshamer, mother of testator, predeceased him; she died July 22, 1953.

Wilson Boshamer and Henry Boshamer are stated to be sui juris.

The statement of proposed distribution raises the question "whether the residue of the estate should be awarded outright to the decedent's nephews, Wilson Boshamer and Henry (C.) Boshamer, in equal shares, or whether it should be awarded in trust. The accountants state as their position "that the balance of principal and income in the estate should be awarded at this time to the two nephews because (1) the language of the Will created nothing but a dry trust; and (2) even if it should be found that there was an intention to create an enforceable trust, the present interests in the two nephews are gifts of income without limitation as to time, and as a result are gifts of the principal itself". They cite Friedheim's Estate, 344 Pa. 542 (1942), where language almost identical was held to create a dry or passive trust. Also, Lowitz Estate, 360 Pa. 91 (1948), where the court stated, page 93: ". . . The bequest 'in trust' without limitations or duties, is a dry or passive trust which is executed by the Statute of Uses: Dodson v. Ball, 60 Pa. 492; Carson et al. v. Fuhs et al., 131 Pa. 256, 260, 18 A. 1017; McCune, Executor, v. Baker, Trustee, 155 Pa. 503, 26 A. 658; Mylin v. Hurst, 259 Pa. 77, 102 A. 429; Friedheim's Estate, 344 Pa. 542, 26 A. 2d 341.

"When testator placed the residue of his estate in a trust fund *the earnings . . . to be divided equally among my* [four named] *sisters'*, he made an absolute gift of income without limitation of time. There was no gift over. The trustee was given no active duties to perform or purpose of testator to carry out. This court has consistently held that such a bequest is a gift of the fund itself: Gibbons's Estate, 317 Pa. 465, 177 A. 50; Emmerich Estate, 347 Pa. 307, 32 A. 2d 400; Carmany Estate, 357 Pa. 296, 53 A. 2d 731, and

the cases therein cited." It is significant that testator had there nominated a professional trustee, i.e., a corporate fiduciary, to "administer" the "trust fund". On the authority of our Supreme Court, we cannot here attach any greater importance to the naming of this corporate fiduciary which is vigorously striving, and properly so, to uphold this trust.

Counsel for the trustee nominated by the will contends that the trust is a valid, active trust. He cites Thompson Trust, 348 Pa. 228, 231 (1944), and Sheasley Trust, 366 Pa. 316, 320 (1951). However, Thompson and Sheasley are inapposite. In both Thompson and Sheasley, there were gifts of income for limited periods, followed by gifts over of the principal.

I am satisfied that the "trust" in question is a dry, passive trust which is executed by the Statute of Uses; the fund will, therefore, be awarded to testator's two nephews free of the "trust". . .

Frequently, because of the very nature of the non-adversary proceedings in this court, occasions arise where the court, in order to protect the interest of unknown or unascertained persons, will appoint a trustee ad litem to protect those interests. See Hunter, Pa. O. C. Commonplace Book (2d ed.) Vol. 4, pp. 405-406. Where a trustee neglected to defend the trust, the court in a will contest appointed a trustee ad litem, suo motu: Snyder Estate, 274 Pa. 574. The reasonable compensation to the trustee ad litem is a proper administration expense, payable out of the estate.

The trustee, so nominated by testator in the instant matter, is here not a mere volunteer. Its duty to defend the "trust" in its literal sense is impelled by testator's inept disposition. The services of its counsel, whose ability is known to the court, was in furtherance of testator's disposition, and while the views expressed are not adopted, his compensation is reasonable in

amount, and is allowed as an expense of administration . . .

And now, June 29, 1962, the account is confirmed nisi.