## F. B. SHALTERS v. A. S. LADD ET AL.

APPEAL BY AMANDA S. LADD, TRUSTEE, FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 2, 1891—Decided April 6, 1891.

[To be reported.]

1. Although a testator, having given an estate in fee-simple, cannot denude it of its incidents and properties, he nevertheless, by subsequent expressions in his will, may restrain the generality of the devise, and convert what otherwise would have been a fee-simple into an inferior interest: Haldeman v. Haldeman, 40 Pa. 34.

(a) A testator devised certain real estate to his daughter, "her heirs and assigns," the same to be enjoyed by her during natural life to her sole and separate use, and immediately after her death to vest in and be enjoyed by her lawful issue, except that her husband, if surviving, should have during his life one third of its rents, issues and profits:

(b) Farther on in the will, he gave the same daughter and others shares of his residuary estate, directing that the shares of any daughters, so requesting, should be invested in real estate, for their separate use during life, and at their deaths "to go in fee-simple to their children or lawful issue, the same as I devised to them the other real estate:"

2. As the form of the devise to the daughter evidenced an intent not to create an estate in her to which curtesy would be incident, and as the

Statement of Facts.

residuary clause explained the testator's intention in the previous devise, showing it to be that the issue were to take, not by limitation, but by purchase, the daughter took but a life-estate under that devise.

3. The word "issue" in a will means, prima facie, heirs of the body, and unless something on the face of the will shows that it was intended to have a less extended meaning, it will be treated as a word of limitation; it is to be construed, however, either as a word of limitation or of purchase, as will best effectuate the testator's intention, gathered from the whole will.

4. When property is limited to a married woman, for her sole and separate use during life, and after her death to her issue, the latter not taking by purchase, if the married woman become discovert, her estate will thereafter be a legal one, and the fact that it was once equitable will not prevent its coalescing with the interest limited to the issue: Per Mr. Justice CLARK.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 13 January Term 1891, Sup. Ct.; court below, No. 2 November Term 1887, C. P.

On September 24, 1887, Francis B. Shalters brought an action for partition against Amanda S. Ladd, Lucy J. Livingood and Emma S. Kuendig, and the husbands of said Lucy J. Livingood and Emma S. Kuendig. The plaintiff's declaration averred that the plaintiff and the defendants, Amanda S. Ladd, Lucy J. Livingood and Emma S. Kuendig, held as tenants in common certain real estate in the city of Reading, each being entitled to the undivided one fourth part thereof, etc. The defendants pleaded non tenent insimul.

On November 19, 1887, Amanda S. Ladd, trustee of Francis B. Shalters under the will of Hannah R. Shalters, deceased, filed a petition praying for a rule to show cause why the petitioner, as such trustee, should not be added to the record as one of the defendants. The petition averred in substance the following facts:

Nicholas Seidel died on May 30, 1850, seised of the real estate in question. By his will, duly proved, he devised the same to his daughter, Hannah R. Shalters, in the following words:

"Also, I give and devise to my daughter Hannah, intermarried with Francis B. Shalters, and to her heirs and assigns,

forever, the three-storied brick tavern and the ground and stable thereto belonging, as it is now possessed and occupied by George Kalbach, situate on the north side of Penn street, in the city of Reading and county of Berks, and adjoining the house and premises which I myself occupy; the said real estate to be enjoyed by my said daughter Hannah, during her natural life, to her sole and separate use, to the exclusion of her husband; she shall not be at liberty to sell or encumber the same, and her receipts from time to time shall be a sufficient discharge for the rents thereof; and immediately after her death the said real estate shall vest in and be enjoyed by the lawful issue of my said daughter Hannah, excepting that if my said son-in-law, Francis B. Shalters, shall survive his wife, he shall during his lifetime enjoy the rents, issues and profits of one third of the said real estate."

The testator made devises to other daughters to be enjoyed by them during their natural lives, and made further disposition of the properties at their death, subject to provisions for their surviving husbands, directing in one instance that the land should vest in fee-simple in the daughter's "lawful issue or her brothers and sisters;" in others, directing that it should vest in the "lawful issue in fee-simple," and in others, in the "lawful issue" of the daughters.

The residuary clause ordained as follows :

"And further, I do hereby order and direct, and I declare it to be my will, that if any or all of my said daughters shall request my said executors, or the survivors or survivor of them, to invest their shares or any one of their shares in said residue of my real, personal, and mixed estate, in real estate, it shall be the duty of my said executors so to invest it for the sole and separate use of my said daughters, respectively, during their lives, and after their deaths to go in fee-simple to their children, or lawful issue, the same as I devised to them the other real estate in former part of my will; but, on the other hand, if my said daughters prefer and elect to take their shares in the rest and residue of my real, personal, and mixed estate, in money or personal property, they are at liberty to do so, and they may then take it to their sole and separate use, and do with it as they think proper, and their receipts for the same shall be a full discharge to my executors."

Statement of Facts.

Francis B. Shalters, the husband of Hannah R. Shalters, died on July 5, 1873. On November 22, 1873, Hannah R. Shalters, for the purpose and with the declared intention of barring all estates-tail, etc., executed a deed of the properties so devised to her, conveying the same to Morton L. Montgomery and his heirs, which deed was duly acknowledged and entered of record in conformity with the provisions of § 5, act of April 10, 1851, P. L. 506. On the same day, Montgomery conveyed the same premises to Hannah R. Shalters in fee-simple. Mrs. Shalters died September 7, 1882, leaving four children, to wit, the plaintiff and the three defendants above named.* By her will dated December 7, 1878, and a codicil thereto dated December 14, 1880, she devised the undivided one fourth of the real estate embraced in this action, and other property, to the petitioner and Emma S. Kuendig, as active trustees for Francis B. Shalters, the plaintiff, and his family. On October 21, 1882, the petitioner's co-trustee, Mrs. Kuendig, was discharged from said trust by the Orphans' Court of Berks county.

Upon the filing of the foregoing petition, a rule to show cause why the petitioner should not be made a party defendant, as trustee of Francis B. Shalters et al. under the will of Hannah R. Shalters, was granted. No answer or demurrer appears to have been filed by the respondents. After argument upon the facts averred in the petition, the court, END-LICH, J., on June 30, 1890, in an elaborate opinion printed in full in 8 Pa. C. C. R. 528, discharged the rule,[1] holding that under the will of Nicholas Seidel, deceased, Hannah R. Shalters took but a life-estate, and that, therefore, the proceedings to bar the entail were ineffectual, and nothing passed by her will to Amanda S. Ladd, trustee, who, accordingly, had no standing to be made a party to the suit.

On August 11, 1890, the defendants' plea having been withdrawn, judgment quod partitio fiat was entered in accordance with the plaintiff's declaration.[3] Thereupon Amanda S. Ladd, trustee, etc., took this appeal, specifying that the court erred:

1. In discharging the rule issued upon the appellant's petition.[1]

---

* It was stated in the appellant's paper-book that these children were all living at the death of Nicholas Seidel.

2. In refusing to add the appellant as a defendant on the record.

3. In entering the judgment quod partitio fiat.[3]

*Mr. Jacob S. Livingood,* for the appellant:

In partition, the court will permit a stranger to the record to be made a party and to interplead, upon his showing a probable title to a part of the land, as well before as after judgment: Wickersham v. Young, 1 Miles 395. A trustee is a proper party in partition as representing the share the title to which is vested in him: Miller on Partition, 43. A special trust maintains the legal estate in the trustee, the cestui que trust having only a right in equity to enforce the performance of the trust: Dodson v. Ball, 60 Pa. 496 ; Hutchison's App., 82 Pa. 509.

1. If Hannah R. Shalters took either an estate-tail or an estate in fee-simple under the will of Nicholas Seidel, Amanda S. Ladd, as trustee under Mrs. Shalters' will, has a title to a share of the land and an interest in these proceedings, and the single question to be determined is, what estate did Seidel's will give to Mrs. Shalters? The first clause of the devise to her clearly gives a fee-simple. The subsequent restriction as to the enjoyment of the property during her natural life, and as to its vesting at her death in her lawful issue, as clearly reduce the gift to an estate-tail, under the rule in Shelley's Case, and the principles of construction settled in Pennsylvania. It is the intention of the testator as set forth in the meaning of his words, that must be determined in interpreting the devise: Hancock's App., 112 Pa. 532.

2. There are no expressions in this devise indicating that the word " issue " is used in any other than its prima facie signification as a word of limitation; and if the intention is that the remainder-men are to take as heirs of the particular devisee, the rule in Shelley's Case is applied, even though it may defeat a manifest intent that the first taker should have but an estate for life : Guthrie's App., 37 Pa. 13 ; Ogden's App., 70 Pa. 509. The word " issue " will be construed as a word of limitation, unless there are expressions in the will unequivocally indicative of a contrary intention: Angle v. Brosius, 43 Pa. 189. As there are no words which in any way limit this effect of the phrase

"lawful issue," the estate given by the will was an estate-tail. The estate in fee-simple given in the former part of the devise is reduced by these latter clauses, as of two clauses in a will clearly inconsistent the latter must prevail: Sheetz's App., 82 Pa. 217; Haldeman v. Haldeman, 40 Pa. 34.

3. The remaining clauses of this devise are consistent with any interpretation that may be put upon it. If, however, they should conflict with the interpretation we have advanced, they cannot overbear it unless clear and positive: Sheetz's App., 82 Pa. 217. The separate-use clause may be applied equally to an estate of inheritance and to a life-estate: Craig v. Watt, 8 W. 498; Faries' App., 23 Pa. 29. So, likewise, the minor clauses in regard to encumbering the land and receipting for the rents. The concluding clause, in regard to the husband's rights, may be construed as intended to limit and restrict the tenancy by the curtesy which otherwise the husband would have in the estate of inheritance given to the wife. The words of the devise clearly indicate that the testator gave his daughter Hannah an estate-tail.

4. It is contended by the plaintiff that the use of the words "children or lawful issue," in the residuary clause, indicates that the word issue, in the prior devise, was used as a word of purchase. But there must be express and unequivocal warrant from the testator for the change of the word from its legitimate meaning: Guthrie's App., 37 Pa. 14; Angle v. Brosius, 43 Pa. 187; and it is not sufficiently clear whether the word "children" dominates the words "lawful issue," in the residuary clause, or vice versa, to change the meaning of issue in the devise to Mrs. Shalters, though it would seem that the use and meaning of this word in that devise, as a word of limitation, has been so positively determined, that it should be the dominant word in the residuary clause.

*Mr. Frank S. Livingood* (with him *Messrs A. B. Wanner & Son*), for the appellees:

1. The testator manifestly intended to give Mrs. Shalters a life-estate. There is an obvious incongruity in the terms used by him, but the setting aside of the law of descent, by narrowing, or rather denying the husband's interest as tenant by the curtesy at his wife's death, necessarily implies that the issue of

the wife must constitute a new root of succession: Faries' App., 23 Pa. 29. While "issue" is prima facie a word of limitation, explanatory words may show that it was used in a restricted sense: Yarnall's App., 70 Pa. 335; Robins v. Quinliven, 79 Pa. 335; Carroll v. Burns, 108 Pa. 386; and it may be construed as a word of limitation or of purchase, as will best serve the intention of the testator: Reinoehl v. Shirk, 119 Pa. 108. His intention, when ascertained, is to be carried into execution, if not inconsistent with the rules or the policy of the law: Daley v. Koons, 90 Pa. 248; Reck's App., 78 Pa. 432.

2. It has even been considered conclusive ground for construing the word issue to mean children, that the testator has elsewhere in the will employed it in this limited sense: 3 Jarman on Wills, 236. An examination of this will shows that in the residuary clause the testator explains the meaning he attached to it in the preceding clauses, interpreting it as the equivalent of children: Moser v. Dunkle, 1 Woodw. 392. In the case cited, Woodward, P. J., passing upon one of the devises in the will of Nicholas Seidel, which, as originally made, would confer an estate-tail, held that the explanatory words in the residuary clause restricted the gift to the testator's daughter to a life-estate. Not only does the residuary clause interpret the word issue, but it comments on the prior devises, declaring them to be the same in character as the residuary devise, and such comment is sufficient to restrict their effect: 2 Jarman on Wills, 642.

3. That the estate of the daughters under the residuary clause is a life-estate, cannot be doubted, as the word children is plainly used there as a word of purchase, there being no devise over from which an estate-tail may be inferred: Robins v. Quinliven, 79 Pa. 336, the use of the term fee-simple, being inconsistent with the idea of an estate-tail: Haldeman v. Haldeman, 40 Pa. 29; Daley v. Koons, 90 Pa. 249. It is plain that the residuary clause is an explanation or recital of the effect of the devises to the daughters, for this reason: There are three distinct modes in which the devises over are made, namely: (1) In fee-simple to lawful issue or to brothers and sisters; (2) to lawful issue in fee-simple; and (3) to lawful issue. The first of these is absolutely inconsistent with an estate-tail or a fee in the daughter. Had the testator not in-

tended, in the residuary clause, to treat all the prior devises to daughters as alike life-estates, he would have directed one general form of settlement. By our construction every part of the will is rendered effective and particular intents are all preserved: Finney's App., 113 Pa. 11; McDevitt's App., 113 Pa. 103; Miller's App., 113 Pa. 459.

OPINION, MR. JUSTICE CLARK:

The single question for the determination of this court is, what estate did Hannah R. Shalters take under the will of Nicholas Seidel, deceased, dated October 1, 1849, and proved June 4, 1850? The clause of the will which gives rise to the controversy is as follows, viz.:

" Also, I give and devise to my daughter Hannah, intermarried with Francis B. Shalters, and to her heirs and assigns, forever, the three-storied brick tavern and the ground and stable thereto belonging, as it is now possessed and occupied by George Kalbach, situate on the north side of Penn street, . . . ; the said real estate to be enjoyed by my said daughter Hannah, during her natural life, to her sole and separate use, to the exclusion of her husband; she shall not be at liberty to sell or encumber the same, and her receipts from time to time shall be a sufficient discharge for the rents thereof; and immediately after her death the said real estate shall vest in and be enjoyed by the lawful issue of my said daughter Hannah, excepting that if my said son-in-law, Francis B. Shalters, shall survive his wife, he shall during his lifetime enjoy the rents, issues, and profits of one third of the said real estate."

It is plain that the devise to his daughter Hannah, her heirs and assigns, forever, standing alone, would be a fee-simple; but whilst a testator, having given a fee-simple, cannot denude it of incidents and properties, he may nevertheless afterwards devise a less estate. As this court said in Haldeman v. Haldeman, 40 Pa. 34, " he may restrain the generality of a devise by subsequent expressions, and convert that which otherwise would have been a fee-simple into an inferior interest; and more frequently in this mode than in any other is a particular estate given. A reduction of the quantum of a gift is allowable, while all attempted alterations of its qualities may prove inoperative."

After making this devise, in words which of themselves would without doubt create a fee-simple, the testator further provides: "The said real estate to be enjoyed by my said daughter Hannah, during her natural life, to her sole and separate use, to the exclusion of her husband; she shall not be at liberty to sell or encumber the same, and her receipts from time to time shall be a sufficient discharge for the rents thereof." As Hannah R. Shalters was at the time a married woman, the effect of this was to create an equitable estate for her separate use during coverture. The instrument clearly speaks the testator's intention to bar the husband's marital rights. It is a matter of no consequence that a trustee was not appointed, for equity will supply a trustee, who under the terms of this will would be the mere depository of the title: Wright v. Brown, 44 Pa. 224; MacConnell v. Lindsay, 131 Pa. 476. The creation and existence of a separate use is sufficient to support the trust during coverture against the effect of the statute of uses: Bacon's App., 57 Pa. 504; Rife v. Geyer, 59 Pa. 393; Dodson v. Ball, 60 Pa. 492; Little v. Wilcox, 119 Pa. 439; MacConnell v. Lindsay, supra. The trust for coverture is not inconsistent with her ownership of the fee. The provision last quoted, therefore, would not necessarily have any effect to reduce or lessen the estate previously given. If the will stopped here, Hannah R. Shalters would have had an equitable separate estate during coverture, and when the purposes of the trust were satisfied, she would be vested in possession, as she was previously vested in the title of the absolute fee.

But the testator further provides: "And immediately after her death, the said real estate shall vest in and be enjoyed by the lawful issue of my said daughter Hannah, excepting that if my said son-in-law, Francis B. Shalters, shall survive his wife, he shall during his lifetime enjoy the rents, issues, and profits of one third of said estate." The appellant's contention is that the effect of this clause is to create an estate in tail; that the "heirs" entitled at the death of the first taker are not her heirs generally, as might appear from the words originally employed, but the heirs of her body, her "lawful issue;" that, although by the second clause quoted the testator restrained the devise to a life-estate only, yet his intention is manifested that her lawful issue shall take as the heirs of her body, which they could

Opinion of the Court.

not do without a previous estate of inheritance in her, and that thereby she must be held to take an estate in tail under the rule in Shelley's Case; for, granting the testator's intention that his daughter should have a life-estate only, that particular intent would be sacrificed, under the rule, to the ascertained general purpose of the testator that her lawful issue should take as the heirs of her body.

Upon this theory of the case, it was suggested at the argument that, as her estate was equitable and the estate of those entitled at her decease was legal, the estate for life and in remainder would not coalesce so as to create an estate in fee or in tail. It is well settled that the interest limited to the ancestor and to the heirs must be of the same quality; that is to say, both must be legal or both equitable: Little v. Wilcox, 119 Pa. 440; Bacon's App., supra.; 1 Fearne on Rem., 52–56. But Francis B. Shalters, the husband, died on July 5, 1873, in the lifetime of his wife; and at the instant of discoverture the equitable estate of the wife was executed, and thenceforth her estate was legal, not equitable. When the purpose of the special trust for the use of the testator's daughter had been satisfied by the death of her husband, it stood then for the sole benefit of a single woman, and was at once executed under the statute of uses: Steacy v. Rice, 27 Pa. 75; McKee v. McKinley, 33 Pa. 92; Freyvogle v. Hughes, 56 Pa. 228; Megargee v. Naglee, 64 Pa. 216; Williams's App., 83 Pa. 377; Little v. Wilcox, supra.

The whole question turns, then, upon the effect of that clause of the will last quoted. Whilst this clause would certainly indicate that the word " heirs," as originally employed, was not intended to signify heirs generally, so as to create a fee-simple, it is by no means clear that the " lawful issue " was intended to take as the heirs of the body of the first taker. " The word ' issue ' in a will is to be construed either as a word of limitation or of purchase, as will best effectuate the intention of the testator, gathered from the entire instrument. Prima facie, however, the word means ' heirs of the body,' and is to be construed as a word of limitation and not of purchase, unless there be something on the face of the will to show it was intended to have a less extended meaning, and to be applied to children only, or to a particular class, or at a particular time : " Reinoehl

v. Shirk, 119 Pa. 113.　It is plain that the will is most unskilfully drawn : the testator or his scrivener would seem to have had some knowledge of technical terms and phrases, but knew little as to their proper meaning and effect.　From the indiscriminate use of terms of technical import, the testator's intention is left in the greatest possible obscurity.

The real estate of a married woman, whether held under the statute or in trust for the separate use of herself and her heirs, descends at her death according to the intestate laws, and this saves to the husband his right as tenant by the curtesy : Dubs v. Dubs, 31 Pa. 149 ; Van Rensselaer v. Dunkin, 24 Pa. 252 ; Ege v. Medlar, 82 Pa. 86 ; Rank v. Rank, 120 Pa. 191 ; unless, in case of a separate use, by the terms of the will or settlement the marital rights, in this respect, are expressly excluded : Cochran v. O'Hern, 4 W. & S. 95 ; Stokes v. McKibbin, 13 Pa. 267 ; Rigler v. Cloud, 14'Pa. 361 ; Yarnall's App., 70 Pa. 336. By the will of Nicholas Seidel, deceased, the real estate in question was to be enjoyed by his daughter Hannah, " during her natural life, to her sole and separate use, to the exclusion of her husband," and " immediately after her death " the same was to " vest in, and be enjoyed by the ' lawful issue '" of the said Hannah, excepting that, in case he should survive his wife, her husband was to have, during his life, one third of the rents, issues, and profits.　The husband's curtesy could not have been excluded from the grant in more apt words.　This feature of the testator's will affords strong proof that the provision for the issue of his daughter was merely a designatio personarum for a new inheritance at her death ; for he not only denies the husband his curtesy, but devises him a new and entirely different interest.　A devise in such form evidences the testator's intent not to create an estate to which curtesy was incident.　In Roberts v. Dixwell, 1 Atk. 607, (cited in Garth v. Baldwin, 2 Ves. Sr. 652, nomine, Sands v. Dixwell,) a testator directed his trustees to convey lands, in trust for the separate use of his daughter for her life and so as her husband should not intermeddle therewith, and after her decease, in trust for the heirs of her body.　Lord HARDWICKE held this to be an executory trust ; and therefore, to prevent the husband becoming tenant by the curtesy, which he could not be consistently with the testator's intention, he decreed that the

daughter should be made tenant for life only, and not tenant in tail: See 1 Jarman on Wills, 125.

Additional light, however, is thrown upon the testator's purpose in the residuary clause, in which he directed, if any or all of his daughters should request his executors to invest their shares, or any one of their shares, in the residuary estate, in real estate, it should be the duty of his executors so to invest it, "for the sole and separate use of my said daughters, respectively, during their lives, and after their death to go in fee-simple to their children or lawful issue, the same as I devised to them the other real estate in the former part of my will," etc. This reference to the previous devise in the residuary clause, being in the language of the testator himself, is explanatory of his intention that the lawful issue of his daughter were not to take by limitation, but by purchase, and by way of remainder in fee, for his purpose is here plainly declared that his daughter's lawful issue, that is, her "children," shall at her death take in fee-simple, and, of course, this would give the daughter a life-estate only. We think the learned judge of the court below was right in his conclusions that Amanda S. Ladd had no interest in the partition proceedings.

. The judgment is affirmed.

