# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## English's Estate.

*Wills—Construction—"Issue"—Life estate—Estate in fee simple—Act of July 9, 1897, P. L. 213—Rule in Shelley's Case.*

1. If it appears that by the word "issue" testator meant issue living at a particular period, as at the death of the first taker, and not the whole line of succession which would be included under the term "heirs of the body," the word "issue" must necessarily be construed to be a word of purchase; and the rule in Shelley's Case can have no application.

2. The Act of July 9, 1897, P. L. 213, entirely changed the presumption which formerly existed in favor of an indefinite failure of issue and substituted a statutory presumption that, in the absence of something else in the instrument indicating a contrary intent, a definite failure is to be presumed.

3. By "something else in the instrument" is meant something in addition to the words under investigation; that is to say, some context or explanation, supplementing the words in question, which shows that, by the latter, testator meant an indefinite failure of issue.

4. The rule in Shelley's Case is a rule of law, and when technical words such as "heirs" or "heirs of the body" are used, the rule applies; but the word "issue" in and of itself, never had such technical significance.

5. The intention of the testator that a devise should fall within the rule in Shelley's Case, must be found in each case before the rule is applied thereto. In ascertaining such intention, where the word "issue" is used, the Act of July 9, 1897, P. L. 213, as con-

strued, when it controls, sweeps away much of the old law and gives a plain guide for the future.

6. Where a testatrix indicates that she intends to give her daughter an estate for life by using the expression "during her life" three times, and also refers to her daughter's interest as "the estate in her care," a direction that the estate should go to "her issue if she leaves any at her death......but, if she leaves no such lawful issue," then over, will be construed as giving to the daughter a life estate only. The rule in Shelley's Case has no application.

Argued February 1, 1921. Appeals, Nos. 15 and 16, Oct. T., 1921, by Board of Foreign Missions of the Presbyterian Church, from decree of O. C. Lawrence Co., Dec. T., 1919, No. 69, O. C. A., dismissing exceptions to report of auditor making distribution of money in hands of Lawrence Savings & Trust Co., executor of estate of Mary E. English, deceased, and of Wm. E. Porter, administrator d. b. n. c. t. a. of estate of Rachel English, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Reversed.

Exceptions to report of auditor, J. Norman Martin, Esq. Before EMERY, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed exceptions. The executor of Mary E. English, and administrator of Rachel English appealed.

*Errors assigned* were decrees dismissing exceptions, quoting them.

*Wylie McCaslin*, with him *Robert L. Wallace*, for appellant.—The words of the will did not create an estate tail in the real estate: Stout v. Good, 245 Pa. 383; Lee v. Sanson, 245 Pa. 392; Harrison v. Harris, 245 Pa. 397.

Under the Act of July 9, 1897, the daughter took but a life estate: Dilworth v. Schuylkill Imp. Land Co., 219 Pa. 527; Lewis v. Link Belt Co., 222 Pa. 139; Smith v. Piper, 231 Pa. 378; Price's Est., 260 Pa. 376; Daniel's Est., 27 Pa. Superior Ct. 358.

*Robert K. Aiken,* with him *W. K. Hugus,* for appellee.
—The primary gift and devise gives to Mary E. English
an absolute estate in both real and personal property:
Yaukey v. Coffman, 240 Pa. 425; Lauer v. Hoffman, 241
Pa. 315; Shapley v. Diehl, 203 Pa. 566; Simpson v. Reed,
205 Pa. 53; Moyer v. Rentschler, 231 Pa. 620; Schrecon-
gost v. West, 210 Pa. 7; Hastings v. Engle, 217 Pa. 419.

The Act of 1897 does not apply.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March
7, 1921:

The question involved is, does the daughter of tes-
tatrix take a life estate or a fee simple? The court be-
low decided that she possessed the latter, and a remain-
derman, whose interest is thus defeated, has appealed.

Rachel English, by will dated July 12, 1904, disposed
of the residue of her estate as follows: "I give and be-
queath to my daughter Mary E. English all the rest and
residue of my property and estate of whatsoever char-
acter and wheresoever situated of which for her own
use and benefit during her natural life. The personal
estate to go into her hands possession and control and
the proceeds and any real estate she also shall have
power to sell at public or private sale without giving any
security, I may leave at my decease at any time during
her life receive the proceeds for her own use during her
life......At the death of my said daughter the estate
in her care demise [devised] from me under this will
shall go to her issue if she leaves any at her death to be
divided among them. But if she leaves no such lawful
issue then the same shall go to the Foreign & Home Mis-
sions of the Presbyterian Church of America to be di-
vided equally between the Home and Foreign Missions
of America."

Mary E. English survived Rachel English, but died
May 21, 1918, unmarried and without issue, leaving her
mother's estate intact; perhaps the latter wished to con-
fer upon the former the right to consume the property

left to her, but this would not necessarily create a fee: Nieman's Est., 229 Pa. 41; Watson's Est., 241 Pa. 271.

It is apparent from the first part of the devise, as above quoted, that testatrix intended to give Mary E. English only a life estate; for she therein uses the expression "during her life" three times, and subsequently refers to the daughter's interest as "the estate in her care." If, however, the mother likewise intended that the issue of her daughter should take from the latter as a source of inheritable succession, as appellee contends is shown by the use of the word "issue," with its context, in the second part of the devise, then this last-mentioned intention would control, and give Mary E. English an estate tail, which, by the Act of 1855, becomes a fee simple. Therefore, a preliminary question to be solved is, Did testatrix—by the provision that, at the death of the daughter, the estate should go to "her issue, if she leaves any at her death......., but, if she leaves no such lawful issue," then over to appellant—mean to employ the word "issue" as indicating a line of inheritance from the devisee, or merely as a description of the persons next to take from her, the testatrix?

While "issue," when used in a devise, has been held time and again to mean the same as "heirs of the body," yet such construction was adopted only on the theory that the word was probably so intended by the testator, and not with the idea that the term "issue," of and in itself, is the equivalent of the technical phrase "heirs of the body": Taylor v. Taylor, 63 Pa. 481, 484.

Speaking on the point in hand, in the case last cited, Justice SHARSWOOD said: "If it appears, either by expression or clear implication, that, by the word 'issue,' the testator meant......issue living at a particular period, as at the death of the first taker, and not the whole line of succession, which would be included under the term 'heirs of the body,' it [the word 'issue'] must necessarily be construed to be a word of purchase; and the rule in Shelley's Case can have no application."

To decide what the present testatrix meant by the use of the word "issue," we must first see what fixed legal meaning, if any, that word, as here used, had at the date of the will.

The Act of July 9, 1897, P. L. 213, provides: "In any gift, grant, devise or bequest of real or personal estate, the words 'die without issue' or 'die without leaving issue' or 'have no issue' or any other words which may import either a want or failure of issue of any person in his lifetime, or at the time of his death, or an indefinite failure of his issue, shall be construed to mean a want or failure of issue in the lifetime or at the death of such person, and not indefinite failure of his issue, unless a contrary intention shall appear by the deed, will or other instrument in which such gift, grant, devise or bequest is made or contained." This statute was repealed by and reënacted in the Wills Act of 1917: see section 14, P. L. 408.

In Dilworth v. Schuylkill Imp. Land Co., 219 Pa. 527, the constitutionality of the Act of 1897 was sustained; it being there held that the legislature had power to fix the legal meaning of words or phrases for future use, and that, by this statute, the lawmakers evidently intended (p. 529) "certain words and phrases, in regard to failure of issue,......which, standing by themselves, [had theretofore] imported a fee tail, and thus a fee simple......, should thereafter indicate a life estate, unless otherwise indicated in the will...... [and, to this end] [p. 531] that, if words are used which, in themselves [that is to say, disregarding all prior judicially determined meanings thereof], leave it doubtful whether the failure of issue intended is definite or indefinite, they [the words in question] shall mean a definite failure of issue, unless something else in the instrument shows that they are not so intended." By "something else in the instrument," is meant something in addition to the words under investigation; that is to say, some context or explanation, supplementing the

words in question, which show that, by the latter, the testator meant an indefinite failure of issue.

As said by Chief Justice MITCHELL, "It [the Act of 1897] entirely changes the presumption which formerly was in favor of an indefinite failure of issue and substitutes a statutory presumption that, in the absence of words indicating contrary intent, a definite failure is to be presumed": Lewis v. Link Belt Co., 222 Pa. 139, 141.

Another interesting case, wherein the Act of 1897 was construed and applied, is Smith v. Piper, 231 Pa. 378, 382. We there said that, while the phrase "without leaving lawful issue" had theretofore usually been taken to mean, according to established interpretation, and "indefinite failure of issue, and not a failure at the death of the first taker," yet this prima facie meaning was changed by the Act of 1897; see also Price's Est., 260 Pa. 376, 379, and what is said of the Act of 1897 in Patterson v. Reed, 260 Pa. 319, 322, which latter, however, has no application here, since the gift to Mary E. English was not absolute in the first instance.

In a will, when the average person says that he gives an estate to A for life, and if A shall die without issue, then the estate shall go to B, most often the intention is that, at A's death, if he has any children then living, they shall take the estate in fee, and, if not, B shall have it (Lewis v. Link Belt Co., 222 Pa. 139, 141); but, in times past, when lawyers and judges liked the intricacies of entails, it was concluded that, when such an expression occurred, the testator probably meant that, if A shall be dead at any time in the future without issue, then, and only then, the estate in remainder shall accrue. Thus they arrived at the conclusion that "die without issue" described a succession of issue, or "heirs of the body," of the first taker, to the extinction thereof, or what is known as an "indefinite failure of issue," and that, therefore, such first taker possessed an estate tail, which cut out the remainder.

The rule in Shelley's Case has become fixed in our law as more than a guide to construction—it is a rule of law; and every testator should know at this late day that, when technical words, such as "heirs" or "heirs of the body," are used, the rule applies (Stout v. Good, 245 Pa. 383, 385; Lee v. Sanson, 245 Pa. 392, 395; Harrison v. Harris, 245 Pa. 397, 400), just as though the writer of such expressions had said in plain words "I give the devisee an estate in fee"; but the word "issue," in and of itself, never had such technical significance (Stout v. Good, 245 Pa. 383, 387), and now, that estates tail have ceased to exist in Pennsylvania (since the Act of 1855), there is no apparent reason why, in order to construe a devise into an estate tail, so that it may be held a fee, the word "issue" should have a technical meaning forced on it for the purpose of bringing a devise within the rule of Shelley's Case. When a case naturally falls within that rule, it applies with all its attributes (Pattin v. Scott, 270 Pa. 49), but, as pointed out at page 4, supra, the intention of the testator to indicate a line of inheritance from the devisee must be found in each case before the rule is applied; and, in ascertaining this intention, where the word "issue" is used, the Act of 1897, as construed by this court, when it controls, sweeps away much old law and gives a plain guide for the future.

The Act of 1897 does not provide simply an additional canon of construction, but, as we have seen, it changes an obsolete guide, substituting therefor one which is intended to, and, as against the old rule, unquestionably will, assist in ascertaining the actual meaning of testators; this, representing, most fortunately, the modern tendency of the law,—to find and enforce the "actual intent" in each case,—should be taken advantage of and given the broadest opportunity for success by the judiciary: Lewis v. Link Belt Co., 222 Pa. 139, 141; Hood v. Pa. Society, 221 Pa. 474, 480.

When the will now before us is read in the light of the Act of 1897, it becomes apparent that testatrix, by the

use of the word "issue," with its context, could not have meant to describe an indefinite failure of issue; and this "is fatal to the idea of an estate tail": Lessee of Findlay v. Riddle, 3 Bin. 139, 167. We may add that, even without regard to the Act of 1897, a strong argument could be made to show the present testatrix contemplated providing for only such issue as might be living at the death of her daughter; which, of course, would be equally fatal to the contention that she intended to create an estate in tail: Lessee of Findlay v. Riddle, supra.

There are two appeals before us, the first relating to real and the second to personal estate; but what we have said in this opinion controls, in effect, both species of property. Mary E. English, now deceased, took but a life interest in the residuary estate of her mother, Rachel English, deceased, and the court below erred in ruling to the contrary.

The decrees appealed from are reversed, and the record is remitted to the court below, with directions to make awards in accord with the views here expressed; the costs to be paid out of the estate of Rachel English, deceased.