## Lippincott's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*J. Kennard Weaver*, for exceptant.

*Myron Jacoby*, contra.

HUNTER, J., September 15, 1943.—The auditing judge found that Francis Donnon was the natural child of Helen Lippincott, and that the subsequent marriage of his mother and father legitimatized his birth. The proofs in support of this finding are overwhelming, and in any event it is a finding of fact which is binding on the court: Link's Estate (No. 1), 319 Pa. 513; Womack's Estate, 25 Dist. R. 101.

The second question raised by the exceptions is the construction of the will of Eleanor T. Lippincott, by codicil to which she provided as follows:

"With the intention of exercising the power of appointment given me by the will of my husband William Aaron Lippincott, I give, devise and bequeath all the property over which I have the right of appointment

under the will of my said husband as follows: One third thereof I give to each of my daughters Bessie Lippincott and Helen Lippincott absolutely. The remaining one third I give to my said two daughters and to my son-in-law Tristram C. Colket in trust to apply so much of the income thereof as may be necessary to the comfortable maintenance and support of my daughter Mabel Lippincott, and to pay over any balance of income in excess of what may be necessary for the comfortable maintenance and support of my daughter Mabel to my daughters Bessie and Helen or the survivor of them and upon the death of my said daughter Mabel to pay over the principal of her share to my said daughters Bessie and Helen and their issue in equal shares."

Helen Lippincott Donnon died in 1928. Mabel Lippincott, the life tenant, died in 1940. Bessie Lippincott Colket survives.

If the appointment in the above codicil to "Bessie and Helen and their issue in equal shares" gave to Helen a vested remainder, then Francis Donnon, the claimant, is disinherited, because by her will Helen gave her estate to her son, J. Henry Donnon, Jr. If, on the other hand, issue are substituted, which was the conclusion of the auditing judge, both sons take in their own right directly from the appointor.

"Issue" is a word of debatable meaning. Our courts were formerly inclined to construe it in the sense of "heirs of the body", but since the Act of July 9, 1897, P. L. 213 (now Wills Act of June 7, 1917, P. L. 403, sec. 14), which provided that "die without issue", and equivalent expressions, shall be construed to mean a definite failure of issue, the tendency has been to treat "issue" as a word of purchase and not of limitation, and *in every case to search for the intention of the testator.*

It may be said with confidence that, where there is a life estate with remainder to the "issue" of the life tenant, the present-day rule is that "issue" is a word of purchase, because the intention of the testator, as so expressed, is clear that the first taker shall be restricted to a life estate, and that ultimately the estate shall go to issue. The testator, of course, may express a contrary intent, but the burden is on him who so claims.

The instant case, however, is not one between a life tenant and issue. The contest here is between a remainderman and issue, and the question is whether we shall apply the old or the new rule in our construction of the phrase "Bessie and Helen and their issue in equal shares."

There are four possible constructions: (1) The testatrix may have used the word "issue" as a word of purchase and intended that the daughters "and" their issue should take concurrently as tenants in common; (2) that the daughters should take for life, with remainder to their issue; (3) that "and" should be read "or", and issue take in substitution for a daughter deceased in the life time of the life tenant (this was the conclusion of the auditing judge); or (4) the testatrix used the word "issue" as a word of limitation with the intention of vesting the remainders in the daughters (which is the contention of the exceptant).

The following are Pennsylvania cases having to do with the problem of a remainder to B and his issue:

In Packer's Estate (No. 2), 246 Pa. 116, the testator created a trust to endure 21 years after the death of the survivor of three named children, with provision for their descendants, and in case there should be no descendants gave part of the trust property to the children of a daughter, deceased at the date of the will, "and their issue". The primary remainder to the descendants of the testator's children first named failed, there being no such descendants; and the secondary

remainder to the children of the deceased daughter became effective. Two of the latter died leaving issue. One of the children, the appellant, survived.

The auditing judge, as recited in the opinion of the lower court, 23 Dist. R. 297, held that the parents took a life estate with remainder to their issue.

The court in banc sustained exceptions to the adjudication and construed the word "issue" as a word of substitution, and found that the living children of deceased grandchildren took estates directly from the testator.

Appellant, the living grandchild, had long since assigned his interest to a trustee in bankruptcy. His contention in the Supreme Court was that his interest was a contingent executory remainder which could not have been assigned by him. The court ruled that his interest was transferable but disagreed with the lower court in its construction of the word "issue". Mr. Justice Moschzisker said (p. 128):

"The word 'issue' in a will, prima facie, means 'heirs of the body,' and is generally a word of limitation (Reinoehl v. Shirk, 119 Pa. 108, 113; Grimes v. Shirk, 169 Pa. 74, 77); and we find nothing in the prior parts of the will before us sufficient to indicate that, in this particular instance, the word was not so intended. Under the construction placed upon this part of the will by the court below, instead of awarding the shares of the deceased Linderman children to their personal representatives, they were given to their children."

It will be noticed, however, that this expression of opinion by the Supreme Court was but dictum, the opinion further stating:

"But, since the present appellant is in no way affected by this, he is not in a position to complain; and, on his appeal, we shall not disturb the awards as made."

In Burkley v. Burkley et al., 266 Pa. 338, real estate was devised to testator's widow for life, and upon her

death "said estate shall fall and vest in my children or their descendants absolutely and in fee". A son died before the life tenant, leaving issue. Held that the word "or" was used in the conjunctive, and that the word "descendants" was used in the descriptive sense of "heirs of the body", and that the remainder was vested in the deceased son.

In Shelmerdine's Estate, 16 Dist. R. 222, the estate was given to testatrix's husband, for life, and at his death to the children "or their lawful issue then surviving". A son died leaving a widow and child. Held that the words "or their lawful issue" were not words of limitation, but were meant to single out individuals who were to take by substitution.

A similar conclusion was reached in Borden's Estate, 44 D. & C. 279, where a remainder was given to the sons of testator "or their legal issue".

It is impossible to distinguish the reasoning of the Supreme Court in Packer's Estate and the decision in Burkley v. Burkley et al., supra, from the instant case. We can reject them only by finding that they do not represent the modern point of view.

After mature deliberation we have reached the conclusion that Packer's Estate and Burkley v. Burkley et al. have been modified by the later decisions, at least to the extent of the presumptions growing out of the use of the word "issue".

In English's Estate, 270 Pa. 1, referring to the expression "die without issue", the court said (p. 7) :

". . . now, that estates tail have ceased to exist in Pennsylvania (since the Act of 1855), there is no apparent reason why, in order to construe a devise into an estate tail, so that it may be held a fee, the word 'issue' should have a technical meaning forced on it for the purpose of bringing a devise within the rule of Shelley's Case."

In Mayhew's Estate, 307 Pa. 84, where the question was whether issue take per stirpes or per capita, the court said (p. 92) :

". . . the artificial conclusion to the effect that 'issue' meant 'heirs of the body' reached by early courts, influenced by a leaning toward the rule in Shelley's Case, can no longer be regarded as applicable in interpreting the word where the context of the will does not lead to such conclusion. Where a user has failed to make clear in what sense he has used the word, it is not at all surprising that courts have reached opposite conclusions, and it is only by following the results with the apparent considerations that must have been in testator's mind that one comes to a just and equitable decision."

And again, in Borden's Estate, supra, at page 282:

"Much of the old law giving the word 'issue' the same technical meaning of 'heirs' or 'heirs of the body' has been swept away and the modern trend of construction in the absence of a contrary intent is to construe that term as a word of purchase . . ."

Therefore, we believe that we are free to state rules, consonant with the intention of a testator, which should govern a gift to B "and his issue".

A simple and immediate gift to B and his issue, B surviving the testator, should be construed as an absolute gift. Public policy favors an indefeasible estate, and it may well be that the testator intended to give such an estate to B should he survive the testator, and made mention of issue only because of the possibility that B might die in testator's lifetime leaving issue who, in that event, should be substituted for their ancestor.

Similarly, where the gift to B and his issue is a remainder interest, as in the instant case, the reasonable point of view is that the testator intended B to have a vested interest, subject to being divested should he die before the life tenant leaving issue, but B surviving the life tenant should take absolutely and in fee.

Jarman on Wills (7th ed.) 1291, cites several English cases where gifts to issue were found to be substitutionary, among which are Pearson v. Stephen, 5 Bli. (N. S.) 203; Gibbs v. Tait, 8 Sim. 132, and Dick v. Lacy, 8 Beav. 214. These are cited, however, as exceptions to the English rule that issue is a word of limitation.

Looking now at the present will we find nothing which requires us to give the word "issue" the broad and artificial meaning of "heirs of the body".

The testatrix has used the phrase "Bessie and Helen and their issue in equal shares" in contrast to words which she had used in connection with the other gifts to her two daughters in this same paragraph of the codicil. The original one-third shares of Bessie and Helen she appointed to them "absolutely". Then in setting up the trust of Mabel's one-third share she provided that income in excess of her needs should be paid to Bessie and Helen "or the survivor of them". Finally, we have the disputed gift of the principal of Mabel's share at her death to Bessie and Helen "and their issue".

This contrast of expressions is significant, and indicates that Bessie and Helen were to take each of the three gifts in a different manner, the first absolutely, the second with the right of survivorship, and the third in conjunction with issue.

We do not believe that "Bessie and Helen and their issue in equal shares" indicates further life estates in them, with remainder to their issue, because the testatrix knew how to create a life estate when such was her intention. Bessie Lippincott Colket, testatrix's daughter, survives, and is entitled to her share absolutely. The rule stated in Chambers v. Union Trust Co., 235 Pa. 610, that a devise to B "and his children" is a life estate in B, with remainder to his children, born and to be born, has never been applied to a gift to B "and his issue".

In our opinion the conclusion of the auditing judge, that the issue of Helen Lippincott Donnon shall take in substitution for their deceased ancestor, is a reasonable construction of testatrix's will, and testatrix's intent is better carried out by a finding that the daughters had a vested remainder, subject to be divested should either die before the life tenant leaving issue.

The exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, P. J., concurring:

As is demonstrated by the majority opinion and the dissenting opinion, there has been and is a great deal of difference of view as to the proper effect to be given to a testamentary gift to a person and her issue. The question here is as to the meaning of these words used by a testatrix in a will of 1913; and I think that we are in a position to start afresh to determine as best we can what they meant to her, without being hampered by special meanings of these words in the distant past.

For reasons which were remembered by Lord Coke, but may have been forgotten by the modern lawyer, it was thought that a conveyance of land to B without more was a conveyance for life only; and to indicate that B had the whole title (fee simple) his heirs must be added as grantees: Brown v. Mattocks, 103 Pa. 16. The Act of April 1, 1909, P. L. 91, 21 PS §2, has changed this. Nevertheless, in the deeds which we use in our daily transactions, we cling to the old language.

So in wills—a devise to B was a devise to him for life only, until the Act of April 8, 1833, P. L. 249, superseded by section 12 of the Wills Act of June 7, 1917, P. L. 403, 20 PS §224.

When the conveyance was to B and the heirs of his body an estate tail was created. That estate has, of course, been turned into an estate in fee simple by the Act of April 27, 1855, P. L. 368, 68 PS §124. See also section 13 of the Wills Act, 20 PS §225.

In each case the quality of B's interest was indicated by words which had an established meaning, but which did not of themselves convey that meaning to the layman, and which required expansion and interpretation.

No such words were ever necessary to grant the full title to personalty: 26 C. J. S. 397.

In the present case we are dealing with the gift of the remainder interest in a trust fund composed both of real and personal property, roughly in the proportions of half and half. If the testatrix had simply given to Bessie and Helen without more, they would have taken the whole interest.

The gift under discussion is to "Bessie and Helen and their issue". Did the testatrix mean the words "and their issue" to describe the quality of the estates which Bessie and Helen took; or did she mean to create a substitutionary gift in case Bessie and Helen died before the time of distribution; or did she mean something else? If the conclusion is the first alternative, lawyers call the word "issue" a word of limitation; and in the second alternative they call it a word of purchase.

It seems to me that we have got away from the use of "words of limitation" even in dealing with real estate. I am quite sure that the layman has little or no idea of such a thing. I doubt if many lawyers are conscious of words of limitation even when filling in the conventional form of deed which they buy at the stationer's. For an interesting discussion somewhat along these lines, dealing with the Act of June 9, 1897, P. L. 213, see English's Estate, 270 Pa. 1.

I therefore think that when a modern testatrix gives to "Bessie and her issue" or when she gives to "Bessie or her issue" she does not intend the word "issue" to define the quality of Bessie's estate. It is more probable that she means to say "to Bessie if living at the time of distribution, and if not, then to her issue; that is to say,

to her living children and the children of any who are then dead, and so on".

KLEIN, J. (dissenting) :

The auditing judge's finding of fact that Francis Donnon was the natural child of Helen Lippincott and that his birth was legitimatized by her subsequent marriage with James H. Donnon is fully supported by the testimony. This fact is, however, immaterial under our view of this case, as we are of the opinion that Helen Lippincott had a vested interest in one half of the remainder of the estate, which passed under her will to her son, J. Henry Donnon, Jr.

The language in the codicil which is before us for construction provides:

"Upon the death of my said daughter Mabel to pay over the principal of her share to my said daughters Bessie and Helen and their issue in equal shares."

The auditing judge substituted the word "or" for the word "and" and construed the phrase as if it read: ". . . to my said daughters Bessie and Helen *or* their issue in equal shares." He therefore concluded that Helen had a vested remainder, subject to be divested in favor of her issue by her death prior to the death of the life tenant, Mabel Lippincott.

We think we are without authority to take such liberties with the testatrix's language. "Courts of justice will transpose the clauses of a will, and construe 'or' to be 'and,' and 'and' to be 'or,' only in such cases when it is absolutely necessary so to do, to support the evident meaning of the testator. But they cannot arbitrarily expunge, or alter words, without such apparent necessity": Whitman's Estate, 329 Pa. 377, 381 (1938). See also Golden's Estate, 320 Pa. 4 (1935), and Conner's Estate, 346 Pa. 271 (1943).

The question whether the word "issue" is to be construed as a word of limitation or a word of purchase

has been before our courts on countless occasions. In Clark v. Baker et al., 3 S. & R. 470 (1817), Justice Duncan said at page 483:

"The word *issue*, in a will, is a word of limitation, or of purchase, as may best serve the intention of the testator. But where it is used without explanatory words, of itself, it is a word of limitation, to be taken as *nomen collectivum*, taking in all issues to the utmost extent of the families, equally with heirs of the body; and then, the word is a proper word of limitation, as heirs of the body."

This rule is firmly entrenched in our law and has been consistently followed by our Supreme Court. See Miller's Appeal, 52 Pa. 113 (1866), Taylor v. Taylor, 63 Pa. 481 (1870), Middleswarth's Admr. v. Blackmore et al., 74 Pa. 414 (1873), Robins et al. v. Quinliven, 79 Pa. 333 (1875), Reinoehl v. Shirk et al., 119 Pa. 108 (1888), Shalters v. Ladd et al., 141 Pa. 349 (1891), O'Rourke v. Sherwin, 156 Pa. 285 (1893), Grimes v. Shirk, 169 Pa. 74 (1895), Oliver's Estate, 199 Pa. 509 (1901), Beckley v. Riegert, 212 Pa. 91 (1905), Nice's Estate, 227 Pa. 75 (1910), Packer's Estate (No. 2), 246 Pa. 116 (1914), and many others. In our opinion, the testatrix in the present case used the word "issue" as a word of limitation and intended to vest her estate in her two daughters, Bessie and Helen.

In approaching this problem, we must not overlook the all-important fact that the language before us for construction is found in a codicil and that it is a well-established rule of testamentary interpretation that a will and codicil must be construed together: Rainear's Estate, 304 Pa. 539, 543 (1931). Let us, therefore, examine the will and two codicils in order to ascertain the testatrix's intention, seeking assistance from the circumstances attending the decedent, such as the condition of her family, the amount and character of her

property, and the objects of her bounty: Sterrett's Estate, 322 Pa. 300, 302 (1936); Mayer's Estate, 289 Pa. 407 (1927).

When the testatrix executed her will on December 9, 1909, she was married and had at least the five children named in the will: a son, William A. Lippincott, Jr., a married daughter, Eleanor Lippincott Colket, and three unmarried daughters, Helen, Bessie, and Mabel Lippincott, the last named being a mental incompetent.

It is apparent that the three unmarried daughters were the primary objects of the testatrix's concern. The only benefit under the will received by the son, William, was a set of books, and the only gifts to the married daughter, Eleanor Lippincott Colket, were some jewelry and personal trinkets. The testatrix divided the rest of her jewelry and personal belongings among three unmarried daughters, but provided with respect to the gift to the daughter Mabel:

"In case my daughter Mabel Lippincott shall be incapacitated through illness at the time of my death, I direct that the articles herein given to her shall be delivered to her sisters, Bessie Lippincott and Helen Lippincott, who shall deliver them to her when she recovers, and in case she does not recover, they shall at her death belong to Bessie Lippincott and Helen Lippincott in equal shares, to be divided between them as they may agree."

She left the rest of her estate to her husband for the term of his life and provided that upon his death:

"I give the said property in equal shares to my daughters, Bessie Lippincott and Helen Lippincott absolutely. It is my desire, but I do not make it a condition or trust, that they should distribute this property in such way and to such persons, including themselves, as they may think will best carry out my wishes."

She then named the two daughters, Bessie and Helen, as executors.

It is clear from the foregoing that the testatrix desired her entire estate to vest in her two daughters, Bessie and Helen, upon the death of her husband. It also seems evident that she expected these two daughters to take care of their unfortunate sister, Mabel. The liability of this care, however, was purely a moral obligation, not enforcible at law. Bessie and Helen had the right to retain the entire residue for their own use. Any contributions for the care of Mabel were discretionary with them and they were answerable only to their own consciences.

William A. Lippincott died on October 1, 1912, giving his wife, Eleanor, a life interest in his estate with power of appointment by will. Since section 3 of the Act of June 4, 1879, P. L. 88, was in effect at the time of his death, Eleanor's will of December 9, 1909, constituted a valid exercise of the power of appointment conferred under his will. Realizing this, she executed a codicil to her will on November 9, 1912, in which she stated:

"I direct that nothing contained in my said will shall be considered as the exercise of any power of appointment given to me by the will of my husband, William A. Lippincott."

Four months later, on March 4, 1913, instead of preparing a new will, as she readily could have done had she intended materially to change her basic plan of distribution, she executed the second codicil, which contains the language which is before us for construction. She first revoked certain of the gifts of jewelry to her daughters, Eleanor and Mabel, in favor of Bessie and Helen. She then disposed of the property over which she had the power of appointment under the will of her husband as follows:

"One third thereof I give to each of my daughters Bessie Lippincott and Helen Lippincott absolutely. The remaining one third I give to my two said daughters and to my son-in-law Tristram C. Colket in trust to

apply so much of the income thereof as may be necessary to the comfortable maintenance and support of my daughter Mabel Lippincott, and to pay over any balance of income in excess of what may be necessary for the comfortable maintenance and support of my daughter Mabel to my daughters Bessie and Helen or the survivor of them and upon the death of my said daughter Mabel to pay over the principal of her share to my said daughters Bessie and Helen and their issue in equal shares."

It is apparent from an examination of this codicil that the testatrix was reaffirming the scheme of distribution set forth in the will, by which she gave her entire residue to her two daughters, Bessie and Helen. The sole purpose of the codicil was to carve out sufficient income to make certain that Mabel was comfortably maintained and supported as long as she lived. This was accomplished by converting the discretionary moral obligation of Helen and Bessie to furnish this care into a fixed legal obligation.

Surely we can safely say that the meaning of the word "issue" as used by the testatrix is not free from doubt. Two constructions are urged: One, that the word "issue" is used as a word of limitation, with the result that Helen had a vested interest in one half of the remainder of the estate; the other, that "issue" was used as a word of purchase, and the remainder vested in Helen's surviving children.

In Moore Estate, 347 Pa. 276 (1943), Mr. Justice Linn, quoting from Rainear's Estate, supra, said (p. 280):

" '. . . a codicil shall disturb the dispositions of the original will only where its provisions are plainly inconsistent with the will: Vernier's Est., 282 Pa. 194, 198; Warne's Est., 302 Pa. 386, 394. If, however, the codicil is subject to two interpretations, one of which follows the main purpose as expressed in the will and

the other is not consistent with it, the consistent interpretation will be adopted, because, generally speaking, there is no presumption that a codicil is intended to change a will: Bissell's Est., 302 Pa. 27, 32. "The clearly expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal, and may justify either of two opposite interpretations. Such directions are to be so construed as to support the testator's distinctly announced main intention . . ." ' "

Application of the foregoing rules of construction compels us to adopt that interpretation of the doubtful language used in the codicil which is consistent with the main purpose of the testatrix as expressed in the will. Since it is clear beyond question that the will vests title to the remainder of this estate in Bessie and Helen, we must construe the word "issue" as a word of limitation and not as a word of purchase.

The adjudication, as well as the opinion of our colleagues affirming the adjudication, relies chiefly upon the principles enunciated, apparently for the first time in 1921, in English's Estate, 270 Pa. 1 (1921), and repeated in Mayhew's Estate, 307 Pa. 84 (1932), from which it appears that "issue" may no longer be regarded prima facie as a word of limitation. Neither the testatrix nor the expert legal draftsmen who prepared the will and codicils can be charged with prescience. They could not, in 1913, be expected to have knowledge of changes in the law brought about many years later. We must, in order to ascertain the intention of the testatrix and the meaning of the technical language used by her, examine the law as it existed at the time the codicil was executed. At that time it seems clear that the word "issue" was prima facie a word of limitation.

However, neither English's Estate nor Mayhew's Estate changed the fundamental rule that the determination of the meaning of the word "issue" depends upon

the context of the testamentary writing. This is made evident by the following statement by Chief Justice von Moschzisker in English's Estate, supra (p. 7) :

"The Act of 1897 does not provide simply an additional canon of construction, but, as we have seen, it changes an obsolete guide, substituting therefor one which is intended to, and, as against the old rule, unquestionably will, assist in ascertaining the actual meaning of testators; this, representing, most fortunately, the modern tendency of the law,—to find and enforce the 'actual intent' in each case,—should be taken advantage of and given the broadest opportunity for success by the judiciary: Lewis v. Link Belt Co., 222 Pa. 139, 141; Hood v. Pa. Society, 221 Pa. 474, 480."

As we read this will and the two codicils from their four corners, it seems clear to us that the testatrix intended to give her entire estate to her two daughters, Bessie and Helen. The testatrix nowhere furnishes any evidence of an intention to make provision for possible grandchildren or more remote descendants. Her sole concern appears to have been to provide for her three unmarried daughters.

In our opinion the use of the word "absolutely" with respect to the primary gift of two thirds of the principal under the codicil to Bessie and Helen and the gift of the excess income to the "survivor of them" does not, in any manner, indicate that the testatrix intended the word "issue" to be regarded as a word of purchase.

It is natural to use the word "absolutely" when gifts of principal are given outright with immediate right to possession. The expression is rarely used, however, when the right to possession is postponed until after the termination of a life estate. With respect to the gift of the excess income to Bessie and Helen "or the survivor of them", it seems clear that this follows the

testatrix's general plan to leave her entire estate, with the exception of the amount necessary to support Mabel, to Bessie and Helen.

We would therefore sustain the exceptions.

Ladner, J. joins in this dissent.